UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21372-Civ-LENARD
MAGISTRATE JUDGE P.A. WHITE

EUGENE HUNTER, JR.,                    :

    Petitioner,                    :

v.                                     :          <u>REPORT OF</u>
                                                  <u>MAGISTRATE JUDGE</u>
JAMES R. McDONOUGH,                    :

    Respondent.                    :
_____

## I. <u>Introduction</u>

Eugene Hunter, Jr., a state prisoner confined in Jackson Correctional Institution at Malone, Florida, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 in this Court, attacking the constitutionality of his convictions entered in Case No. 01-15270 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition, the Court has the petitioner's pleading regarding the limitations period, the respondent's response to an order to show cause with multiple exhibits, and the petitioner's reply.

## II. <u>Claims</u>

Hunter raises thirteen grounds for relief. In brief, he challenges two trial court rulings; the first, regarding the denial

of his motion to suppress the evidence seized at the time of his arrest and, the second, regarding the admission of testimony from Detective Kmjian as an expert (grounds one and two). He also raises eight claims of ineffective assistance of trial counsel (grounds three, four, five, six, seven, eight, twelve and thirteen), and three claims of ineffective assistance of appellate counsel (grounds nine, ten and eleven).

### III. Procedural History

The pertinent procedural history of this case is as follows.[1] Hunter was convicted after jury trial of armed robbery with a firearm, possession of a short-barreled shotgun, and carrying a concealed firearm. (Record on Direct Appeal at 156-58). He was sentenced to a life term of imprisonment on the armed robbery conviction, a fifteen-year term on the possession of an illegal weapon conviction, and a five-year term on the carrying a concealed weapon conviction. Id. at 159-62. The terms were imposed to run concurrently. Id. at 162. Hunter prosecuted a direct appeal from his convictions, raising the identical claims presented here as grounds one and two, as well as a third unrelated claim. (Volume One to Appendix to Response to Petition at 2-30). The convictions and sentences were per curiam affirmed by the appellate court in a decision without written opinion. Hunter v. State, 871 So.2d 887 (Fla. 3 DCA 2004)(table).

---

[1] The procedural history of this case has been gleaned from the exhibits submitted by the respondent, which includes the direct appeal proceedings (Volume One to Appendix to Response to Petition for Writ of Habeas Corpus); the record in the postconviction proceedings in both the state trial and appellate courts (Volumes Two and Four to Appendix to Response to Petition for Writ of Habeas Corpus); the record in the state habeas corpus proceedings (Volume Three to Appendix to Response to Petition for Writ of Habeas Corpus); and the record before the trial court, which includes the transcript of pretrial proceedings and the entire trial transcript, excluding the voir dire proceedings. (DE# 12, 13, 14, 15).

Hunter also pursued postconviction relief, first filing a pro se motion pursuant to Fla.R.Crim.P. 3.850, subsequently amended, raising the identical claims presented in this federal petition as grounds three, four, five, six, seven, twelve and thirteen, as well as other ineffective assistance of trial counsel claims. (Volume Two to Appendix to Response to Petition at 73-97, 107-69). After reviewing the state's responses and the record in the case, the trial court summarily denied the motion, as amended, in thorough and well-reasoned written orders. (Volume Two to Appendix to Response to Petition at 98-106, 171-85, 186-88, 189-91). After proceedings had concluded in the trial court, Hunter took an appeal from the trial court's rulings, and the denial of postconviction relief was affirmed in a decision without written opinion. Hunter v. State, 952 So.2d 1199 (Fla. 3 DCA 2007)(table).

In the interim, Hunter also filed a pro se petition for writ of habeas corpus with attached exhibit, subsequently supplemented, in the Florida Third District Court of Appeal, alleging that he received ineffective assistance of appellate counsel for the same reasons presented here as grounds nine, ten and eleven, as well as an additional unrelated claim. (Volume Three to Appendix to Response to Petition at 321-55, 362-74). After receiving responses from the state and a reply from the petitioner, the Florida Third District Court of Appeal denied the petition without explanation. (Volume Three to Appendix to Response to Petition at 358-96). See also Hunter v. State, 946 So.2d 27 (Fla. 3 DCA 2007)(table). Hunter also pursued a second pro se Rule 3.850 motion in the trial court, raising the same ineffective assistance of trial counsel claim presented here as ground eight. (Volume Four to Appendix to Response to Petition at 404-26). The state filed a response, asserting that the motion should be denied as an improper successive motion in that the claim should have, and could have,

been raised in the initial Rule 3.850 motion. <u>Id</u>. at 434-36. The state did not address the merits of the claim whatever. <u>Id</u>. The trial court summarily denied the motion without explanation, and denied Hunter leave to file a reply. <u>Id</u>. at 437, 438. The trial court's ruling was <u>per curiam</u> affirmed on appeal in a decision without written opinion. <u>Hunter v. State</u>, 942 So.2d 888 (Fla. 3 DCA 2006)(table).

Not long after all proceedings had concluded in the state courts,[2] Hunter came to this Court, instituting the instant federal habeas corpus proceeding. In his thorough and meticulous response to the order to show cause, the respondent rightfully does not challenge the timeliness of this petition. <u>See</u> 28 U.S.C. §2244(d). The respondent asserts, however, that certain claims of this federal petition are unexhausted and/or procedurally barred from federal habeas corpus review. <u>See</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A) (A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[3] The

---

[2]Hunter also pursued mandamus proceedings in the Florida Supreme Court which have no bearing on the instant petition. (Volume One to Appendix to Response to Petition at 68-72; Volume Three to Appendix to Response to Petition at 397-402).

[3]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert</u>. <u>denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979). Claims of ineffective assistance of appellate counsel are raised in Florida by petition for writ of habeas corpus filed in the appropriate district court of appeal. <u>State v. Dist. Ct. of Appeal, First Dist.</u>, 569 So. 2d. 439, 442 n.1 (Fla. 1990).

respondent has addressed on the merits all cognizable claims that have been properly exhausted and which are not subject to a procedural bar. The various procedural defenses will be addressed below when individually reviewing the claims presented.

### IV. <u>Standard of Review</u>

This Court is required to entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975). The instant petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (1996). The provisions of that statute are, therefore, applicable and provide that a prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court, unless the decision of the state court was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the State court.  28 U.S.C. §2254(d)(1), (2). <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  <u>See also</u>, <u>Fugate v. Head</u>, 261 F.3d 1206, 1215-16 (11 Cir. 2001).

A state court decision is "contrary to" the Supreme Court's clearly established precedent within the meaning of §2254(d)(1) only if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or if the

state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005); <u>Williams v. Taylor</u>, 529 U.S. at 405-06. In the habeas context, clearly established federal law refers to the holdings of the Supreme Court's decisions as of the time of the relevant state-court decision. <u>Hall v. Head</u>, 310 F.3d 683, 690 (11 Cir. 2002) <u>citing</u>, <u>Williams</u>, 529 U.S. at 412. However, in adjudicating a petitioner's claim, the state court does not need to cite Supreme Court decisions and the state court need not even be aware of the Supreme Court cases. <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002); <u>Parker v. Secy of Dept. of Corrections</u>, 331 F.3d 764, 775-76 (11 Cir. 2003). So long as neither the reasoning nor the result of the state court decision contradicts Supreme Court decisions, the state court's decision will not be disturbed.[4] <u>Id</u>. Further, a federal court must presume the correctness of the state court's factual findings. <u>See</u> 28 U.S.C. §2254(e)(1); <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 870 (2002).

## V. <u>Facts</u>

In brief, the facts of this case, as revealed by the evidence admitted at trial, are as follow.[5] Lucien Germaine was working as

---

[4]The Eleventh Circuit has continued to stress the importance of the standard established in Section 2254(d), stating that the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11 Cir. 2002). Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." <u>Crawford</u>, <u>supra</u> at 1295, <u>quoting</u> <u>Bell v. Cone</u>, 535 U.S. 685 (2002). <u>See also</u> <u>Hawkins v. Alabama</u>, 318 F.3d 1302 (11 Cir.2003)(discussing AEDPA's limits on federal court authority).

[5]For a more detailed recitation of the facts of this case with citations to the trial transcript, see the briefs filed in the direct appeal proceeding.

a cashier at a store on the evening of April 26, 2001, when a man entered the store with a backpack and a short barreled shotgun. After Germaine had put his hands in the air and was pushed to the floor by the man holding the gun, the man took the cash from the register. The robbery was captured on videotape. On April 30, 2001, Hunter was arrested on unrelated charges and a search incident to the arrest produced a sawed-off shotgun and a blue backpack on the floor of the vehicle between Hunter's legs.[6] A photographic lineup was conducted in the instant case on May 11, 2001, and Germaine selected Hunter's picture from the photographic array and he positively identified Hunter as the man who had robbed him at gunpoint. Detective Kumjian of the Miami-Dade County forensic video unit testified at trial that there were similarities between the backpack and the shotgun in the surveillance videotape to the backpack and the shotgun that Hunter possessed at the time of his arrest. The victim was unable to identify Hunter in court as the perpetrator. The defense at trial was one of misidentification.

## VI. Discussion

### A. Fourth Amendment Violation

Hunter claims in ground one that the trial court erred in denying his motion to suppress the evidence seized at the time of his arrest, because the investigatory stop was not supported by

---

(Initial Brief of Appellant at 10-5; Answer Brief of Appellee at 1-3)(Volume One to Appendix to Response to Petition at 2-30). See also Trial Transcript. It is noted that the trial transcript was not numbered in chronological fashion. The transcript of the proceedings immediately preceding the trial and voir dire were numbered 179-450, while the proceedings which followed were numbered 1-178 and 451-553. Pages 179-450 of the transcript have not been filed with this Court in that that portion of the trial has no bearing on the issues presented here.

[6]As a result of the unrelated arrest, Hunter was convicted in this Court in Case No. 01-cr-00443-Jordan of felon in possession of a firearm and he was sentenced on December 10, 2001, to a term of imprisonment of thirty months to be followed by a three-year term of supervised release. Hunter was released from federal confinement on July 3, 2003.

reasonable suspicion, thereby, violating his constitutional rights pursuant to the Fourth and Fourteenth Amendments to the Constitution. Hunter's Fourth Amendment claim cannot be raised on habeas review.

It is well settled that federal habeas corpus relief is not available to a state prisoner on the ground that a conviction was based on evidence obtained in violation of the Fourth Amendment, if the state provided an opportunity for full and fair litigation of the Fourth Amendment claim. Cardwell v. Taylor, 461 U.S. 571 (1983); Stone v. Powell, 428 U.S. 465 (1976); Devier v. Zant, 3 F.3d 1445, 1455 (11 Cir. 1993); Harris v. Dugger, 874 F.2d 756, 761 (11 Cir.), cert. denied, 493 U.S. 1011 (1989); Ponce v. Cupp, 735 F.2d 333, 335 (9 Cir. 1984); Swicegood v. Alabama, 577 F.2d 1322, 1324-25 (5 Cir. 1978). The doctrine established in Stone v. Powell, supra has survived the passage of the AEDPA.  See Bradley v. Nagle, 212 F.3d 559, 564-66 (11 Cir. 2000)("The Supreme Court ... has held that federal courts are precluded from conducting post-conviction review of Fourth Amendment claims where state courts have provided 'an opportunity for full and fair litigation' of those claims."), cert. denied, 531 U.S. 1128 (2001).

The record reveals that Hunter's Fourth Amendment claim was raised in a pretrial motion to suppress all of the evidence seized at the time of his arrest as well as the photographs taken of those items on the identical basis presented here. (Record on Direct Appeal at 18-9). The trial court conducted an evidentiary hearing on the motion, during which testimony was heard from the arresting officers. See Transcript of pretrial proceedings conducted on July 15, 2002, at 96-164. After hearing argument from counsel, the trial court denied the motion, finding that reasonable suspicion that a crime had or was about to occur was present and that the detention

8

was a valid <u>Terry</u>-stop.[7] <u>Id</u>. at 163-64. Hunter took an appeal from the denial of his motion to suppress where his claim was considered and rejected. <u>Hunter v. State</u>, 871 So.2d 887 (Fla. 3 DCA 2004).

The claim now raised as ground one was fully litigated in the state courts. Rightfully so, Hunter does not appear to contend in this federal proceeding that he was denied the opportunity to present facts to the state trial court or to argue the issue before an appellate court. Rather, he appears to argue that the procedural bar of <u>Stone</u> should not apply here because the Florida courts applied the law incorrectly in evaluating his claim and/or the state court's conclusions were based upon unreasonable findings by the trial court. This argument is unavailing, as apparently conceded by Hunter in his reply. Hunter was not denied a full and fair opportunity to litigate his Fourth Amendment claims, and he is not entitled to relief. <u>See</u> <u>Bradley v. Nagle</u>, 212 F.3d at 565 (stating that "[w]e cannot now say that [petitioner] was denied a full and fair opportunity to litigate his Fourth Amendment claims, even were we to disagree with the state courts' analysis or conclusion. To do so would vitiate the Supreme Court's decision in Stone, which we are not empowered to do.") Because this Court is satisfied that Hunter had a full and fair opportunity to litigate his Fourth Amendment claim in the Florida courts, Hunter's Fourth Amendment claim is precluded from federal habeas corpus review.

B. <u>Improper Admission of Testimony</u>

Hunter claims in ground two that his constitutional rights were violated when the trial court permitted Detective Kmjian to testify at trial that the shotgun and backpack found in Hunter's possession at the time of his arrest had "similar" characteristics

---

[7]<u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

as the shotgun seen being used in the video tape recording of the instant robbery and the backpack carried by the perpetrator. Specifically, Hunter alleges that Detective Kmjian was not an expert in "eyesight" and should not have been allowed to give his opinion as to what was visible in the video tape recording. He states that Detective Kmjian's expert opinion testimony did not assist the jury because it was clearly within the jurors' realm of experience to be able to see and decide for themselves whether there were any similarities between the noted objects.

The respondent first asserts in his response that this claim is unexhausted from federal habeas corpus review in that it was never raised in federal constitutional terms in the state courts. The respondent further argues that the claim is prospectively procedurally barred from federal habeas corpus review. Review of Hunter's brief on direct appeal, where he challenged his convictions based upon the identical claim, reveals that Hunter provided no citation whatever of any case that might have alerted the state courts to any federal nature of his claims. (Initial Brief of Appellant at 17-9). While Hunter did present the state court with the facts underlying any possible federal due process claim, his brief on direct appeal fails to indicate that he was seeking relief under any specific federal constitutional guarantee. That is fatal.[8] See <u>Baldwin v. Reese</u>, 541 U.S. 27, 29-34 (2004)(<u>citing</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995)(per

_____

[8]The mere similarity between a claim of state and federal error is insufficient to establish exhaustion. <u>See</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995)(noting petitioner's failure to apprise state courts that evidentiary challenge was based in part on federal due process concerns was insufficient to exhaust §2254 due process claim; further noting mere similarity of claims was insufficient). Nor is it enough for a petitioner to present a state claim that is analogous or closely similar to a federal claim. <u>Castillo v. McFadden</u>, 370 F.3d 882, 886 (9 Cir. 2004). Moreover, general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion. <u>See</u> <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996).

curiam)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). Based upon the well-settled principles regarding exhaustion, claim two of this petition has not been properly exhausted.

Because Hunter could have preserved and raised a federal constitutional claim regarding the failure to receive the requested jury instruction on direct appeal, he is precluded from doing so collaterally in a Rule 3.850 motion.[9] Since there are no procedural avenues remaining available in Florida which would allow Hunter to return to the state forum and exhaust the subject claim, the claim is procedurally defaulted from federal review.[10] Collier v. Jones, 910 F.2d at 773; Parker v. Dugger, 876 F.2d 1470, 1477-78 (11 Cir. 1989)("plain statement" rule of Harris v. Reed, 489 U.S. 255 (1989), does not apply when a claim was never presented in state court). Claims that are unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, Wainwright v. Sykes, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent," as contemplated in Murray v. Carrier, 477 U.S.

[9]In Florida, issues which could be but are not raised on direct appeal may not be the subject of a subsequent Rule 3.850 motion for postconviction relief. Kennedy v. State, 547 F.2d 912 (Fla. 1989). Further, even if the subject claim were amenable to challenge pursuant to a Rule 3.850 motion, it cannot now be raised in a later Rule 3.850 motion because, except under limited circumstances not present here, Florida law bars successive Rule 3.850 motions. See Fla.R.Crim.P. 3.850(f). See also Moore v. State, 820 So.2d 199, 205 (Fla. 2002)(holding that a second or successive motion for postconviction relief can be denied on the ground that it is an abuse of process if there is no reason for failing to raise the issues in the previous motion). As indicated herein, Hunter's second Rule 3.850 motion was denied as an improper successive motion.

[10]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11 Cir. 1999).

478 (1986). <u>See House v. Bell</u>, ___ U.S. ___, 126 S.Ct. 2064 (2006); <u>Dretke v. Haley</u>, 541 U.S. 386, 124 S.Ct. 1847 (2004). <u>See also United States v. Frady</u>, 456 U.S. 152, 168 (1982). Since Hunter has not established cause to excuse his default,[11] it need not be determined whether he suffered actual prejudice. <u>See</u> <u>Glover v. Cain</u>, 128 F.3d 900, 904 n. 5 (5 Cir. 1997). Even if Hunter is contending that he is actual innocent, this exception to the unreviewability of procedurally defaulted claims is applied only in the rarest of cases; <u>see Dretke</u>, 541 U.S. at 392-93, 124 S.Ct. at 1852, and Hunter has failed to meet the high standard.[12] <u>See Bousley</u>

---

[11]Hunter may be attempting to overcome the procedural bar as to this claim by arguing that he received ineffective assistance of appellate counsel with regard to the claim in that appellate counsel failed to raise the claim in federal constitutional terms pursuant to <u>Frye v. United States</u>, 293 F. 1013, 1014 (D.C. Cir. 1923). The claim of ineffective assistance of counsel may constitute cause for a procedural default. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 453 (2000); <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). While Hunter may have satisfied cause for the procedural default, he cannot defeat the bar since he has failed to satisfy the cause-and-prejudice standard in that the alleged ineffectiveness of appellate counsel claim does not rise to the level of an independent constitutional violation for the reasons stated herein in connection with discussion of ground nine. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. at 452-53.

[12]The Supreme Court has recently reiterated the standard to be applied to claims of actual innocence. <u>See</u> <u>House v. Bell</u>, ___ U.S. ___, 126 S.Ct. 2064, 2077 (2006)(<u>citing</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 319-322, 324 (1995)). The Supreme Court noted that while the "standard is demanding and permits review only in the 'extraordinary' case", the <u>Schlup</u> standard does not require absolute certainty about the petitioner's guilt or innocence." <u>Id</u>. (citations omitted). Accordingly, "[a] petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt--or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." <u>Id</u>. In the habeas context, "actual innocence" means factual innocence, not mere legal insufficiency. <u>Bousley v. U.S.</u>, 523 U.S. 614, 623 (1998). The petitioner must support the actual innocence claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324. The Supreme Court emphasized that actual innocence means factual innocence, not mere legal insufficiency. <u>Id</u>. <u>See also</u> <u>High v. Head</u>, 209 F.3d 1257 (11 Cir. 2000); <u>Lee v. Kemna</u>, 213 F.3d 1037, 1039 (8 Cir. 2000); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107 (2 Cir. 2000)(citing <u>Schlup v. Delo</u>, 513 U.S. 298, 299, (1995); <u>Jones v. United States</u>,153 F.3d 1305 (11 Cir. 1998)(holding that appellant must establish that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him). In this federal proceeding, Hunter has come forward with no new reliable evidence to support any claim of actual innocence.

v. United States, 523 U.S. 614 (1998), quoting, Schlup v. Delo, 513
U.S. 298, 327-328 (1995).

Even if the claim was not subject to a procedural bar, Hunter
would not be entitled to habeas corpus relief on his claim. The
record reveals that Hunter moved in limine to prevent the subject
opinion testimony before the trial proceedings commenced. (Record
on Direct Appeal at 17). A pre-trial hearing was conducted during
which Detective Kmjian testified regarding his opinions and counsel
offered argument. See Transcript of pretrial proceedings conducted
on July 15, 2002, at 26-96. The trial court denied the motion in
limine and ruled that the state was permitted to present the
subject testimony. Id. at 93-6. The trial court found in pertinent
part that Detective Kmjian had training in identifying objects from
photographs taken from videos, which was different from still
photographs, and that the explanation provided by Detective Kmjian
of the comparison photographs would assist the jury in determining
that a black line in the photograph was being held in a consistent
manner as a shotgun and that his testimony would go to the weight
of the evidence with the jury deciding whether to believe the
officer's testimony. Id. During the trial, over the defense's
numerous objections, Detective Kmjian testified that in his
opinion, the video recording depicted the same shotgun that was
recovered from the automobile at the time of Hunter's arrest.
(Trial Transcript at 487-92).

Admission of the now-challenged testimony does not warrant
federal habeas corpus relief. Federal courts will grant habeas
corpus relief on the basis of a state evidentiary ruling only if
the ruling runs afoul of a specific constitutional right or renders

the petitioner's trial fundamentally unfair. <u>Sims v. Singletary</u>, 155 F.3d 1312 (11 Cir. 1998)(denying habeas corpus relief on a claim that a motion for mistrial was wrongfully denied). <u>See also</u> <u>Estelle v. McGuire</u>, 502 U.S. 62 (1991); <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11 Cir. 1983); <u>Jameson v. Wainwright</u>, 719 F.2d 1125 (11 Cir. 1983); <u>DeBenedictus v. Wainwright</u>, 674 F.2d 841, 843 (11 Cir. 1982). In general, federal courts are reluctant to second-guess state evidentiary rulings, recognizing that states deserve wide latitude in that area, <u>Maness v. Wainwright</u>, 512 F.2d 88, 92 (5 Cir. 1975), so federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error. <u>Boykins v. Wainwright</u>, 737 F.2d 1539, 1543-44 (11 Cir.), <u>cert. denied</u>, 470 U.S. 1059 (1985). The evidentiary error must be of such a magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause, in order for relief to be warranted. <u>See</u> <u>Woods v. Estelle</u>, 547 F.2d 269, 271 (5 Cir.), <u>cert</u>. <u>denied</u>, 434 U.S. 902 (1977). Moreover, such evidentiary rulings are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict." <u>Sims v. Singletary</u>, 155 F.3d at 1312, <u>quoting</u> <u>Brecht v.</u> <u>Abrahamson</u>, 507 U.S. 619, 623 (1993).

Hunter cannot demonstrate that the trial court's admission of the state witness' opinion testimony was improper pursuant to state law or that he received a fundamentally fair trial by its admission.[13] As pointed out by the respondent, the trial court properly permitted Detective Kmjian's testimony in that the court

---

[13]In Florida, testimony in the form of opinion or inference is admissible although it includes an ultimate issue to be decided by the jury. <u>See</u> <u>Fla.Stat</u>. §90.703 (West 1999). Also, in Florida, an expert may testify as to his opinion or inference. <u>See</u> <u>Fla.Stat</u>. §90.704. The same evidentiary principles apply in the federal courts. <u>See</u> <u>Fed.R.Evid</u>. 703, 704(a).

found that Detective Kmjian possessed specialized knowledge and training in identifying certain attributes of still images taken from video surveillance which, although the lay person could see the "black line" in the picture, the lay person could not know that the "black line" depicted a shotgun. Detective Kmjian was established to have attended courses in performing this analysis, and was able to provide the jury with opinion testimony regarding what he believed the photographs depicted. See Trial Transcript at 472-73. Detective Kmjian had previously been qualified as an expert in giving similar testimony. See Transcript of pretrial proceedings conducted on July 15, 2002, at 28-39. Detective Kmjian ultimately testified only that the objects in the photographs and videotape recording shared similar characteristics and the objects appeared to be a shotgun and backpack. See Trial Transcript at 486-494. Detective Kmjian testified that the objects in the videotape recording could have been the shotgun and backpack recovered from Hunter when arrested. Id. As a certified video forensic analyst, Detective Kmjian explained how he identified the still objects in the video, and he did not express an opinion as to Hunter's guilt. Id. at 479-492.

Accordingly, the jury was merely aided in making its own determinations and findings regarding Hunter's guilt, with the assistance of Detective Kmjian's expert knowledge that the video still images showed a shotgun and backpack. The trial court, therefore, properly ruled that Detective Kmjian was qualified as an expert and properly permitted the admission of his testimony. Moreover, even if the subject testimony was improperly admitted, the evidence did not have a substantial and injurious effect on the verdict. Review of the other evidence admitted against Hunter, which included a positive pretrial identification from the victim that Hunter was the perpetrator, strongly demonstrated his guilt.

Thus, the challenged testimony, even if erroneous, did not substantially influence the jury. <u>See</u> <u>Brecht</u>, 507 U.S. at 623. In sum, Petitioner's due process right to a fundamentally fair trial was not denied by the state court's admission of the objected to evidence, even if prejudicial, and he is therefore not entitled to habeas corpus relief. The state courts' rejection of this claim on direct appeal should therefore not be disturbed.[14] <u>See</u> 28 U.S.C. 2254(d); <u>Williams v. Taylor</u>, <u>supra</u>.

### C. <u>Ineffective Assistance of Trial Counsel</u>

Hunter claims that he received ineffective assistance of trial counsel for eight enumerated reasons (grounds three, four, five, six, seven, eight, twelve and thirteen).[15] To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result.[16] <u>Strickland v. Washington</u>, 466 U.S.

---

[14]The appellate court's decision affirming Hunter's convictions on direct appeal constitutes an "adjudication on the merits," and is thus entitled to deference under the Antiterrorism and Effective Death Penalty Act (AEDPA) for purposes of subsequent federal habeas corpus review, even though the state court did not issue an opinion providing any discussion with respect to the claims. <u>Wright v. Secretary for Dept. of Corrections</u>,278 F.3d 1245 (11 Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).

[15]Hunter was represented at trial by Special Assistant Public Defenders Paul Kaminsky and Nushin Sayfie.

[16]When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance is reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." <u>Chandler v. United States</u>, 218 F.3d 1305 (11 Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204 (2001). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within "the wide range of professionally competent assistance." <u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322 (11 Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11 Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466

668 (1984). Scrutiny of an attorney's performance is highly deferential. Reviewing courts will not second-guess strategic decisions; rather, the attorney's performance is evaluated in light of all the circumstances as they existed at the time of the conduct, and is presumed to have been adequate. Strickland v. Washington, 466 U.S. at 689-90. Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. Id. at 690-91. Hunter presented the identical claims of ineffective assistance of trial counsel to the state courts in postconviction proceedings. With the exception of ground eight, for the reasons expressed immediately below, the trial court's determination that Hunter was not entitled to postconviction relief on his claims of ineffective assistance of counsel, which decision was affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[17] Relief must therefore be denied pursuant to 28 U.S.C. §2254(d).[18] Williams v. Taylor, 529 U.S. 362

---

U.S. at 698. The court "may decline to reach the performance prong of the ineffective assistance test if convinced that the prejudice prong cannot be satisfied." Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995)(citing Strickland v. Washington, 466 U.S. 668, 697 (1984)). A claim of ineffective assistance is a mixed question of law and fact. Strickland, 466 U.S. at 698.

[17]The appellate court's decision affirming the denial of Hunter's Rule 3.850 motion without written opinion constitutes an "adjudication on the merits," and is thus entitled to deference under the AEDPA for purposes of subsequent federal habeas corpus review. Wright v. Secretary for Dept. of Corrections,278 F.3d 1245 (11 Cir. 2002), cert. denied, 538 U.S. 906 (2003). Hunter is only entitled to relief if the state appellate court's rejection of his claims was directly contrary to, or was an unreasonable application of, clearly established federal law. Id. at 1253-56. See also Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1325 (11 Cir. 2002). For the reasons stated herein, the appellate court's decision affirming the denial of Hunter's Rule 3.850 motion on the subject issues was not unreasonable, and he is therefore not entitled to relief in this federal proceeding.

[18]It should be noted that the trial court judge presiding over the trial proceedings was the same judge who presided over the subject state postconviction proceedings. Where the judge presiding over the trial proceedings is the same judge presiding over the post conviction proceedings, the presumption of

(2000).

Hunter alleges in ground three that his lawyers rendered ineffective assistance when they failed to file a motion to suppress the out-of-court identification evidence based on the suggestiveness of the identification procedure. Hunter complains that the victim had been shown a single photograph of a person wearing a backpack before the formal photographic identification procedure took place. Hunter further maintains that the victim's identification was unreliable, because the description of the perpetrator was often inconsistent and conflicting and that the victim had been unable to identify Hunter as the perpetrator during the trial proceeding. The identical issue was raised and rejected in the Rule 3.850 proceeding with the trial court stating as follows in its order of denial:

> [Hunter's] argument that his trial counsel was ineffective for failing to file a motion to suppress has no merit because there is no basis for filing such a motion as [Hunter] has not demonstrated that the police used an impermissibly suggestive identification procedure in this case.

(Order Denying Motion for Postconviction Relief at 1). As properly determined by the state courts, no constitutional violation occurred here given the fact that there was no legal basis upon which to support a motion to suppress the out-of-court identification evidence.

An identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification can constitute a Fourteenth Amendment violation, Stovall v. Denno, 388 U.S. 293

---

correctness afforded the findings of fact of the state court is particularly strong. See May v. Collins, 955 F.2d 299, 314 (5 Cir.), cert. denied, 504 U.S. 901 (1992). As indicated, the trial court's decision in the Rule 3.850 proceeding was affirmed on appeal.

(1967), and a conviction based on eyewitness identification following a pretrial identification is invalid if the procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[19]  See Manson v. Braithwaite, 432 U.S. 98 (1977);  Neil v. Biggers, 409 U.S. 188 (1972); Simmons v. United States, 390 U.S. 377 (1968).  See also Grant v. State, 390 So.2d 341, 343 (Fla.), cert. denied, 451 U.S. 913 (1981). As properly found by the state courts in the postconviction proceeding, in this case, the pretrial procedures employed by the detective in identifying Hunter as the armed robber were not unlawfully suggestive, and the pretrial identification was not unreliable.

The robbery here took place in a well-lit store by an armed man who stood no more than twenty feet from the victim-cashier before forcing him to the ground. See Trial Transcript at 34-47. The armed robber's face was not hidden or concealed in any way and the victim was able to see at least part of his face three times during the incident. Id. Shortly after the robbery, the police arrived and the victim gave a description of the perpetrator. Id. at 35. Detective Miller compiled a photographic array, consisting of six photographs of males with similar characteristics. Id. at 132-34. Approximately two weeks after the incident, Detective Miller showed the victim the photographic array, which included Hunter's photograph. Within seconds of viewing the photographs, the

---

[19]Both Florida and federal courts employ the same standard to determine if an out-of-court identification should be excluded:  1) did the police employ an unnecessarily suggestive procedure in obtaining it; and 2) if so, considering all the circumstances, was a likelihood of irreparable misidentification thereby created.  Manson v. Braithwaite, 432 U.S. 98 (1977);  Neil v. Biggers, 409 U.S. 188 (1972);  Chihora v. Dugger, 840 F.2d 893 (11 Cir. 1988):  Grant v. State, 390 So.2d 341, 343 (Fla.), cert.denied, 451 U.S. 913 (1981). Factors to be considered in assessing the likelihood of misidentification include the witness' opportunity to view the defendant at the time of the crime, the witness' degree of attention, the level of certainty demonstrated by the witness, and the length of time between the crime and the confrontation.  Grant, supra, at 343.

victim selected Hunter's picture, identifying with certainty that person as the armed robber. Id. at 39-40, 134-39. Detective Miller had not met with the victim between the time of the robbery and the photographic lineup procedure and he had not shown him any photographs before conducting the instant lineup. Id. at 134-35. Further, before conducting the identification procedure, the detective had not advised the victim that Hunter had been arrested and that a shotgun had been found during the arrest. Id. at 135. Also, Hunter had not been told that the robber was included in the photographic lineup. Id. at 136-37.

Review of the trial testimony of the victim who made the identification and the testimony of the detective who was involved in the pretrial identification procedure reveal that the photo identification process used was not unnecessarily suggestive and there is no indication that the victim had seen other photographs before the lineup procedure. Even if the victim had somehow been shown a picture of a man with a backpack,[20] which Detective Kmjian posed for to use as a comparable photograph in his similarity analysis, the picture would not have assisted the victim in selecting Hunter's face from a line-up. Id. at 490-92. Since there was no substantial likelihood of misidentification, and the victim's pretrial identification was unequivocal, any motion to suppress would not have been successful. While it is true that the victim could not positively identify Hunter at trial as the

---

[20]Review of the record appears to indicate that the victim might have indicated during his pretrial deposition that he had been shown a picture of a man with a backpack or a photograph of a backpack before viewing the photographic array. See Trial Transcript at 16-20. However, the evidence in the case did not support any such statement and, otherwise, indicates that the victim had apparently been confused. Id. It is noted that Leucine Germaine, is a Haitian immigrant, who was not proficient in the English language at the time of the trial and testified with the assistance of a Creole-speaking interpreter. Id. at 26-7.

perpetrator, his inability to do so does not render counsel's performance ineffective, as alleged. There was testimony at trial from other witnesses that Hunter's appearance had changed dramatically from the time of his arrest until the trial proceedings in that he had lost a considerable amount of weight, approximately fifty pounds, and his hair was longer at the time of trial. See Trial Transcript at 99, 127. The reliability of the victim's identification of Hunter as the perpetrator was a matter for the jury.[21] Counsel has no duty to raise issues which have little or no chance of success. See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001)(counsel is not ineffective for failing to raise a non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Moreover, the defense at trial was one of misidentification. Defense counsel, during cross-examination of the state witnesses and by way of argument to the jury, vigorously challenged the identification obtained by the police, attempting to convince the jury that the victim had misidentified Hunter. During argument before the jury, the defense reminded the jury of the victim's inability to make an in-court identification and further focused on the lack of physical evidence, arguing that the state had failed to establish beyond a reasonable doubt that Hunter was in fact the robber. See Trial Transcript at 503-04. While the jury rejected the defense presented, as was the jury's prerogative, and instead

---

[21]The credibility and reliability of witness testimony is a question of fact to be determined by the jury. Mason v. Brathwaite, 432 U.S. 98, 116 (1977). While the testimony of these witnesses may contain questionable elements, "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." Mason, 432 U.S. at 116. As credibility is a question of fact for a jury, the jury is "exclusively responsible for determining a witness' credibility." United States v. Strauss, 999 F.2d 692, 696 (2 Cir. 1993).

believed the evidence admitted by the state and the testimony of the state witnesses, Hunter has not demonstrated that counsel's judgment to forego a motion to suppress the allegedly tainted identification was so patently unreasonable that no competent attorney would have chosen it. See Simmons v. United States, 390 U.S. 377, 384 (1968)("The danger that use of the [pretrial identification] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error."). Hunter, therefore, fails to satisfy the first prong of the Strickland test. See Scott v. Elo, 100 Fed.Appx. 332 (6 Cir. 2004)(holding that petitioner not entitled to habeas corpus relief in that counsel's strategic decision not to file motion to suppress identification and instead rely on cross examination to attack weight of witnesses' testimony was reasonable conduct under Strickland); Pittman v. Warden, Pontiac Correctional Center, 960 F.2d 688, 690-91 (7 Cir. 1992)(same). Further, Hunter cannot demonstrate that he suffered prejudice as a result of counsel's failure to pursue a motion to suppress. There was more than sufficient evidence that Hunter was the person who committed the subject crimes. Hunter has, therefore, failed to demonstrate that he received ineffective assistance of counsel on this basis. Strickland, supra.

Hunter alleges in ground four that his lawyers' performance was constitutionally ineffective, because they failed to call Officer Toledo as a defense witness at trial to testify about the victim's description of the perpetrator. Hunter states that the victim provided Officer Toledo with one description of the perpetrator and the clothing worn, a different description to another officer, and a third description at trial. The trial court in the Rule 3.850 proceeding, where the identical issue was raised,

denied Hunter relief on this claim, stating as follows:

> [Hunter's] argument that trial counsel was ineffective in this case for not calling Officer Toledo as a witness in this case has no merit because not calling the officer was a strategic decision made by trial counsel. Furthermore, at the time of trial, [Hunter] agreed with that decision on the record. Finally, even if Officer Toledo testified as [Hunter] proposes that he would have it would not have changed the outcome in this case.

(Order Denying Motion for Postconviction Relief at 1).


As correctly indicated by the state trial court, decisions whether to call a particular witness or not to cross-examine certain witnesses are generally questions of trial strategy. See generally Conklin v. Schofield, 366 F. 3d 1193, 1204 (11 Cir. 2004)(stating that which witnesses to call, if any, is a strategy decision that should seldom be second guessed), cert. denied, 544 U. S. 952 (2005); Dorsey v. Chapman, 262 F.3d 1181, 1186 (11 Cir. 2001)(holding that petitioner did not establish ineffective assistance based on defense counsel's failure to call expert witness for the defense in that counsel's decision to not call the expert witness was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy); United States v. Guerra, 628 F.2d 410, 413 (5 Cir. 1980)("Complaints concerning uncalled witnesses impose a heavy showing since the presentation of testimonial evidence is a matter of trial strategy and often allegations of what a witness would have testified to are largely speculative").


It is clear from review of the record that trial counsel's decision not to call Officer Toledo as a witness at trial was a matter of trial strategy and that Hunter, at the least, acquiesced to this strategy after consultation with counsel. Hunter

acknowledges in his petition that trial counsel discussed calling Officer Toledo with him, but advised that the testimony would be damaging. <u>See</u> Petition at 20. (DE# 1). Further, the trial transcript indicates that at the close of the defense's case, Hunter agreed with the decision not to call Officer Toledo.[22] <u>See</u> Trial Transcript at 498-500. The decision not to call Officer Toledo was mutual, and based on the potential damaging testimony that the officer would have provided, especially on cross-examination by the state, even if the subject inconsistent descriptions could have been revealed during the examination. The strategy was reasonable under the circumstances of this case, as found by the trial court in the Rule 3.850 proceeding. <u>See</u> 28 U.S.C. §2254(e)(1). It is also clear from the record that having Officer Toledo testify about the victim's "changing" description of the perpetrator would not have affected the outcome of the case. At best the officer's testimony would have been cumulative to counsel's strong cross-examination of the victim and Detective Miller, during which counsel revealed to the jury the different descriptions given by the victim. <u>See</u> Trial Transcript at 62-4,

---

[22]Specifically, the trial transcript reveals that after Hunter indicated to the court that he voluntarily elected not to testify at trial, the following exchange took place between prosecutor Gahm, the court and Hunter:

MR. GAHM:        Along those lines, there is an officer's statement made in this case such that the robber may have had a multicolored sweater on, and I would have disputed that. Now, Officer Toledo had indicated that he would be available today should the Defense want to call him.

THE COURT:       Mr. Hunter, did you discuss the possibility of calling Officer Toledo on your behalf?

MR. HUNTER:      Yes.

THE COURT:       And you decided together, you and your attorneys, and agreed that should not happen?

MR. HUNTER:      Yes.

(Trial Transcript at 499).

142-69. Hunter did not receive ineffective assistance of trial counsel, as alleged in ground four.

Hunter claims in ground five that his lawyers improperly failed to impeach the victim's trial testimony with his prior statements to the police concerning the description of the perpetrator. As properly determined by the state court's in the Rule 3.850 proceeding, this claim is meritless as refuted by the record. See Order Denying Motion for Postconviction Relief at 1. Review of the trial transcript indicates that defense counsel fully cross-examined the victim regarding the identification he provided the police immediately after the incident, attempting to demonstrate to the jury that the victim's identification of Hunter as the perpetrator was not reliable in that his description provided was uncertain and inconsistent.[23] See Trial Transcript at

---

[23]The subject cross-examination of the victim is as follows:

Q.  Do you recall the exact description that you gave to the police officer of the perpetrator?

A.  Maybe I forgot part of the description, but I believe I still recall the information that I gave them.

Q.  When you were giving the description to the officer, was he writing it down?

A.  I don't recall, but I'm not a hundred percent sure, but I believe the officer was writing down something.

Q.  Do you recall telling the officer that the perpetrator was approximately 5-foot six?

A.  No. I recall saying to the officer that the man is a little bit taller than I am.

Q.  Do you recall telling the officer the perpetrator was wearing a multi-colored sweater?

A.  Sweater?

Q.  Yes.

A.  I don't recall. What I recall is that the thief was wearing a white T-shirt, short sleeve.

Q.  Now, you also spoke to a detective; is that correct?

62-3. The victim testified with certainty that he recalled that the perpetrator was wearing white, not a multi-colored sweater, as told to a different officer, Officer Toledo. Id. Consequently, counsel's performance was not ineffective, as claimed. Strickland, supra.

Hunter alleges in ground six that he received ineffective assistance of trial counsel, because his lawyers denied him the right to participate in his own defense. Specifically, Hunter asserts that counsel failed to provide him before trial all discovery materials in the case, which included copies of the depositions, surveillance video tape recordings and still photographs. Petitioner claims that due to counsel's failure to provide him with such materials, he could not advise counsel that (1) the victim's identification had been tainted as it was provided after being shown an individual picture of him (Hunter) and that counsel should file a motion to suppress as a result; and (2) Officer Toledo should be called as a defense witness. Hunter further contends that without such discovery materials he could not assist counsel in the decision whether to call an expert witness on the issue of the photographs and/or whether to go to trial or accept a plea. As determined by the state courts, Hunter is not entitled to relief on this claim.

In denying Hunter postconviction relief, the trial court ruled as follow:

---

A.    Yes.

Q.    And that was also on the same day of the incident?

A.    I don't recall if it was the same day.

Q.    You spoke to more than one police officer on the day of the incident?

A.    I don't recall if I spoke to more than one officer.

(Trial Transcript at 62-63).

26

> I find that even if [Hunter] was not shown before trial the
> items that he complains about in this section of his motion
> that it would not have made a difference in the outcome of
> this case. Furthermore, [Hunter] was fully colloqued (sic) at
> trial about his counsels' performance and was completely happy
> with them at the time. As shown in the excerpt of the trial
> transcript cited to by the State, [Hunter] stated on the
> record that his lawyers had done everything that he asked them
> to do.

(Order Denying Amended Motion for Postconviction Relief at 2).
Here, it is apparent from the record that Hunter communicated with
his lawyers before trial, and that he was satisfied with the
representation received from counsel. As noted by the trial court,
Hunter was expressly asked by the court immediately after the state
had rested whether his lawyers had done everything for him that he
had asked them to do and Hunter unhesitatingly responded, "Yes they
have." (Trial Transcript at 497). When specifically asked whether
his counsel had filed all motions, documents and pleadings that he
had wanted them to file, he also answered affirmatively. <u>Id</u>. Thus,
as was true with regard to calling Officer Toledo as a state
witness, Hunter clearly agreed with defense counsel's strategy and
defense presented at trial or, at least acquiesced, with trial
counsel's decisions. <u>Id</u>. at 497-500.

Even if Hunter had not received any or all of the materials he
now mentions, he did not receive ineffective assistance of trial
counsel. His unequivocal statements made to the court carry a
strong presumption of truthfulness and pose a formidable barrier in
subsequent collateral proceedings. <u>See generally</u> <u>Blackledge v.
Allison</u>, 431 U.S. 63, 74 (1977); <u>Kelley v. Alabama</u>, 636 F.2d 1082,
1084 (5 Cir. Unit B. 1981). His after-the-fact complaints regarding
counsel's trial strategy are unavailing. Further, for the reasons
stated above, the record demonstrates that Hunter did not suffer
any prejudice as a result of counsel's decision not to call Officer

27

Toledo. Regarding, the video and photographs, defense counsel indicated during the pretrial proceedings that he would discuss with Hunter whether the hiring of a defense expert was necessary to rebut Detective Kmjian's testimony. See Transcript of pretrial proceedings conducted on July 15, 2002, at 71. While the defense elected not to call a defense expert witness, as indicated above, trial counsel thoroughly cross-examined Detective Kmjian regarding his experience and qualifications and his conclusions based upon the photographs and video recording. Counsel's performance was no constitutionally ineffective in this regard. See Strickland, supra.

Hunter alleges in ground seven that his lawyers rendered ineffective assistance when they failed to object and move for a mistrial when the Williams-rule[24] evidence became a feature of the trial and when they failed to preserve the issue for appellate review. The evidence to which Hunter is referring is his unrelated arrest on April 30, 2001, and the evidence obtained pursuant to a search incident to the arrest. This claim is without merit in that it is refuted by the record.

Trial counsel filed a pretrial motion in limine, in which he requested the court to exclude the following: (1) Williams rule evidence sought to be introduced by the state;[25] (2) all evidence

---

[24]See Williams v. State, 110 So.2d 654 (Fla.), cert denied. 361 U.S. 847 (1959). See also Fla.Stat. §90.404, commonly known as the "Williams Rule" which governs the admissibility of "other crimes" evidence in the Florida courts.

[25]Federal courts recognize the principle that evidence of other crimes, wrongs, or acts is not admissible to prove bad character. Britton v. Rogers, 631 F.2d 572 (8 Cir.), cert. denied, 451 U.S. 939 (1981). However, "other crimes" evidence may be admitted when offered for appropriate purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or identity. Hall v. Wainwright, 733 F.2d 766 (11 Cir. 1984); Britton v. Rogers, supra at 575. The same principles are found in Florida regarding the admission of collateral crime evidence. See Fla.Stat. §90.404(2)(a) (commonly known as the "Williams Rule"); Buenano v. State, 527 So.2d 122, 124 (Fla. 1987); Williams v. State, 110 So.2d

regarding the circumstances of Hunter's arrest on April 30, 2001, as well as evidence of the arrest itself; (3) all direct and indirect evidence of the shotgun seized from Hunter at the time of his arrest, including all fingerprint evidence linking the shotgun to Hunter; (4) all opinion testimony regarding characteristics of the backpack seized from Hunter on April 30, 2001; and (5) trial testimony and out-of-court statements of Mr. Quentin Bodie.[26] (Motion in Limine)(Record on Direct Appeal at 17). A pretrial hearing was conducted on the admissibility of the evidence that would allegedly improperly implicate Hunter in unrelated crimes due to the items that were seized at the time of his arrest, resulting in prejudice. See Transcript of pretrial proceedings conducted on July 15, 2002, at 167-175. After argument by counsel, the trial court denied the motion as to the above-listed items one through four and granted it as to item five, finding that the collateral crime evidence was admissible for permissible purposes, such as identity. Id. at 168, 174. Immediately before the evidentiary portion of the trial commenced and throughout the trial proceeding, trial counsel objected to the admission of the subject evidence and a mistrial was sought. See e.g., Trial Transcript at 3-5, 86-7, 101-02. When determining which questions posed by the jurors could properly be answered, defense counsel did comment that the unrelated incident had improperly become a "feature" of the trial by the jury. Id. at 113. Trial counsel agreed with the state, however, that the state had not made it such a feature, the jury had. Id. at 113-14.

---

654 (Fla. 1959). See also Vail v. State, 890 So.2d 373, 376 (Fla. 3 DCA 2004); Henry v. State 649 So.2d 1366, 1367-68 (Fla. 1994); Jackson v. State, 403 So.2d 1063, 1066 (Fla. 1981).

[26]Bodie was a passenger in the vehicle at the time of Hunter's arrest. See Transcript of pretrial proceedings conducted on July 15, 2002, at 106.

In the postconviction proceeding, the trial court found the instant claim meritless, stating as follows:

> I find that [Hunter's] trial lawyer preserved any issues for appeal and objected in a timely fashion to the *Williams* rule evidence in this case. I find that the decisions made concerning the *Williams* rule evidence were the correct ones, the jury was properly instructed regarding the limited way they were to use the evidence, and the evidence did not become a feature of the trial.

(Order Denying Amended Motion for Postconviction Relief at 1). Here, the trial court determined that the evidence regarding the unrelated arrest was intertwined with the crimes charged, and was therefore properly admissible. See Pomeranz v. State, 703 So. 2d 465 (Fla. 1997); Consalvo v. State, 697 So. 2d 805 (Fla. 1996).

In this case, before and during the trial, trial counsel vigorously attempted to prevent the presentation of the subject evidence. As such, counsel's performance cannot be deemed deficient. Further, contrary to Hunter's assertion, the shotgun and backpack's seizure did not become a feature of the trial. The evidence regarding Hunter's arrest came only from Detective Blanco, whose brief testimony was constantly objected to by counsel. See Trial Transcript at 86-90, 92-102. The detective's testimony focused on the seizure of the items due to their being in "plain view" at the time of the arrest and Hunter's appearance at the time of the arrest. Id. Also, Detective Miller testified briefly about seeing the flyer pertaining to Hunter's unrelated arrest for the sole purpose of explaining how he came to compile the photographic lineup used for identification in this case. Id. at 130-132. No testimony was brought from Detective McDonnell, who testified at the suppression hearing and was the arresting officer. See Transcript of pretrial proceedings conducted on July 15, 2002, at 96-145.

30

Here, the now-challenged testimony was admissible because it was inextricably intertwined with the subject criminal incident, as found by the trial court. The trial court also correctly found that the Williams Rule evidence had not become a feature of the trial in that its use was brief and limited to the permissible purpose of establishing identification and linking the evidence to Petitioner and nothing more (i.e., that the backpack and shotgun were found in Petitioner's possession and that is how the police became aware of a possible association between Petitioner and the robbery). The objected-to evidence was, therefore, admissible under both applicable Florida and federal law principles. See e.g., Knighton v. Mullin, 293 F.3d 1165, 1171 (10 Cir. 2002)(holding that in habeas corpus proceeding that state court's admission of evidence of defendant's other crimes and bad acts during four-day, multi-state crime spree did not result in fundamentally unfair trial, so as to warrant federal habeas relief in that evidence was relevant to explain facts surrounding two murders underlying charges, tended to show defendant's intent and motive, and helped to establish defendant's role as leader and triggerman among three participants, which was relevant in light of defense presented). See also Fitzsimmons v. State, 935 So.2d 125, 128 (Fla. 2 DCA 2006)(noting that even if collateral crime evidence is inadmissible Williams rule evidence, collateral crime evidence may be admissible if it is inextricably intertwined with the crime charged); Vail v. State, 890 So.2d 373, 376 (Fla. 3 DCA 2004)(holding that evidence of uncharged crimes which crimes are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is admissible because it is a relevant and inseparable part of the act which is in issue); Jackson v. State, 403 So.2d 1063 (Fla. 4 DCA 1981)(holding that evidence of an earlier robbery that had been committed within hours of a second robbery on the same day was admissible in the prosecution for the

second robbery and the murder of grocery store clerk during the
second robbery in view of fact that the earlier robbery established
the entire context out of which the criminal conduct arose).

Moreover, Hunter was not prejudiced by the admission of the
now-challenged evidence in that the jury was instructed by the
court to only consider the Williams-rule evidence for the limited
purpose of identification. See Record on Direct Appeal at  145;
Trial Transcript at 549. It is generally presumed that jurors
follow their instructions. Richardson v. Marsh, 481 U.S. 200, 211
(1987). Even if counsel's performance could in any way be viewed as
deficient regarding the challenge to the subject evidence, Hunter
suffered no prejudice as a result in that the evidence of guilt was
strong and the nature of the collateral crime evidence was limited.
In other words, the admission of the challenged testimony, even if
erroneous, did not substantially influence the jury and did not
render the trial fundamentally unfair. See Brecht v. Abrahamson,
507 U.S. 619, 623 (1993). Hunter has therefore failed to satisfy
either prong of the Strickland standard.

Hunter claims in ground eight that his lawyers rendered
ineffective assistance when counsel failed to challenge a defective
probable cause affidavit and request a Franks-hearing. The
identical claim was presented in Hunter's second Rule 3.850 motion.
(Volume Four to Appendix to Response to Petition at 404-26). In
response to the motion, the state solely asserted that the motion
should be denied as an improper successive motion in that the claim
should have, and could have, been raised in the initial Rule 3.850
motion. Id. at 434-36. The state did not address the merits of the
claim whatever. Id. The trial court entered a written order
summarily denying the motion without explanation, id. at 437, 438,
and the ruling was per curiam affirmed without written opinion. See

Hunter v. State, 942 So.2d 888 (Fla. 3 DCA 2006)(table). The respondent correctly asserts that this claim is procedurally barred from federal habeas corpus review in that the state courts applied an express procedural bar.

As stated herein, Florida courts consistently apply the rule that a second or successive post-conviction motion which asserts new and different grounds than a defendant's first motion is an abuse of process unless the defendant shows justification for his failure to raise the new ground in his first post-conviction motion. See Fla. R.Crim.P. 3.850(f). See also Spaziano v. State, 545 So.2d 843, 844 (Fla. 1989)(holding that second 3.850 motion must be summarily denied where first motion raised claim of ineffective assistance of counsel, second motion sought to raise additional grounds for that ineffectiveness, and second motion did not allege defendant was precluded from asserting the additional grounds in the first motion); Washington v. State, 876 So.2d 1233, 1234 (Fla. 5 DCA 2004)(holding that petition for habeas corpus properly denied as successive 3.850 motion and thus abuse of process where defendant previously filed 3.850 motion asserting several grounds of ineffective assistance of counsel and either re-stated same issues in habeas petition or asserted grounds which could or should have been addressed in previous 3.850 motion); Christopher v. State, 489 So.2d 22 (Fla. 1986)(holding that "where an initial motion for postconviction relief raises the claim of ineffective assistance of counsel, the trial court may summarily deny a successive motion which raises additional grounds for ineffective assistance of counsel).

The failure of a federal habeas petitioner to adhere to state procedural rules governing the proper presentation of claims will bar federal review of those claims in a subsequent federal habeas

corpus proceeding. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977);
<u>Sims v. Singletary</u>, 155 F.3d 1297, 1311 (11 Cir. 1998). The federal
habeas court must defer to the state court's interpretation of its
procedural rules, and must enforce those rules as well as enforcing
the procedural rulings of the state courts. <u>See</u> <u>Lindsey v. Smith</u>,
820 F.2d 1137 (11 Cir. 1989). <u>See also</u> <u>Agan v. Vaughn</u>, 119 F.3d
1538, 1549 (11 Cir.1997)(holding that "state courts are the final
arbiters of state law, and federal habeas courts should not second-
guess them on such matters.") This Court cannot presume that a
Florida court ignores its own procedural rules when the court
issues only a one-sentence denial of relief. Such a ruling does not
suggest that the state court resolved the issue on the federal
claim presented. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 735-36, 111
S.Ct. 2546, 115 L.Ed.2d 640 (1991); <u>Kight v. Singletary</u>, 50 F.3d
1539, 1544-1545 (11 Cir. 1995)(applying procedural bar where state
court's summary dismissal did not explain basis for ruling); <u>Tower
v. Phillips</u>, 7 F.3d 206, 209 (11 Cir. 1993)(applying bar where
state court did not rule on claims presented).

Thus, because the state courts correctly applied procedural
default principles of state law to arrive at the conclusion that
review of the ineffective assistance of trial counsel claim raised
in Hunter's second Rule 3.850 motion was barred, this court must
respect the trial and appellate court decisions and deem the claim
procedurally barred as well, <u>see</u> <u>Bailey v. Nagle</u>, 172 F.3d 1299,
1302-03 (11 Cir. 1999), unless either the cause and prejudice or
the fundamental miscarriage of justice exception is established.
<u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848-49 (1999); <u>see also</u>
<u>Coleman v. Thompson</u>, 501 U.S. 722, 750-51 (1991). For the identical
reasons stated above in the discussion of ground two, Hunter has
failed to overcome the procedural bar and is, therefore, not

entitled to review on the merits of his claim.[27]

Hunter claims in ground twelve that he received ineffective assistance of trial counsel, because his lawyers failed to object to hearsay evidence regarding his alleged height and weight at the time of the offenses. For example, Detective Robert Miller testified that Petitioner was 5'10" and approximately 230 pounds at the time of his arrest. Hunter contends that he was two inches taller and thirty pounds lighter at the time of the arrest. This claim was raised and found meritless by the trial court in the Rule

---

[27]It is noted that even if the claim were not procedurally barred, it appears that Hunter is not entitled to habeas corpus relief. In Florida, the veracity of an affidavit can be attacked if the defendant can (1) point out the specific provision of the affidavit alleged to be defective, (2) allege that the defect consisted either of a deliberate falsehood or a statement in reckless disregard of the truth, and (3) offer proof supporting the allegations in the form of affidavits or other sworn or reliable statements of witnesses, or satisfactorily explain their absence. Johnson v. State, 660 So.2d 648, 655 (Fla. 1995)(citing Franks v. Delaware, 438 U.S. 154, 171 (1978)). If the defendant succeeds in satisfying these three requirements, he is not automatically entitled to relief. Rather, he is entitled to a hearing on his challenge to the veracity of the affidavit. At the hearing, the defendant would have to prove not only that the statements were false and were made intentionally or recklessly, but that they were material. That is, he would have to show that without the offending language, the affidavit would not have supported a finding of probable cause. Id. Thus, for petitioner to succeed in establishing that counsel's performance was deficient and that he was prejudiced thereby, he was required to show the state court four things: (1) that he had a colorable basis for challenging the veracity of the warrant affidavit such that, had his attorneys asked for a hearing, he would have been granted one, Franks, supra, 438 U.S. at 171, 98 S.Ct. at 2684 (noting that "[a]llegations of negligence or of innocent mistake are insufficient"); (2) that Detective Miller's untruthful statements were "deliberate falsehood[s] or [were made in] reckless disregard for the truth," id.; (3) that without the falsehoods, the affidavit would have been insufficient to support a finding of probable cause, id. (noting that even if the petitioner can show deliberate falsehood or reckless disregard for the truth, a motion to suppress will fail if, after the challenged language is set aside, "there remains sufficient content in the warrant affidavit to support a finding of probable cause."); and (4) that he was prejudiced by his attorneys' failure to move to suppress based on the alleged falsehoods in the warrant affidavit. See Knight v. McDonough, 2007 WL 566520, *7 (N.D.Fla. 2007). From review of the record in its entirety, it does not appear that Hunter could satisfy his burden in that the subject statement contained in the affidavit regarding the photographic lineup was not false and/or if not true, the statement was not a "deliberate falsehood."

3.850 proceeding for the following reasons:

> I find that Detective Miller's testimony regarding the height and weight of [Hunter] at the time of the offense was properly admitted and that there was no basis to object to its admission and that counsel for [Hunter] was not ineffective for failing to do so.

(Order Denying Motion for Postconviction Relief at 1).

Review of the record reveals that the detective's testimony was elicited in conjunction with the victim's earlier inability to make an in-court identification of Hunter as the perpetrator, advising the jury that since the time of his arrest Hunter's appearance had changed in that he had a dramatic weight loss and the length of his hair was different. Since the evidence was appropriate lay witness opinion testimony and since Detective Miller had personally interacted with Hunter, the evidence was not inadmissible hearsay and was properly admitted, as determined by the trial court. Even if the testimony could be considered inadmissible on the basis of hearsay, counsel's failure to object on the basis of hearsay to the detective's testimony regarding the physical description of Hunter appears to have been a reasonable tactical decision, as evidenced by his skillful cross-examination of the detective in which he attacked the credibility of the subject testimony on the same basis before the jury.[28] See Trial

---

[28]Specifically, trial counsel questioned the detective as follows on cross-examination:

Q.   Now, you earlier testified that at the time of his arrest, Mr. Hunter was five-foot ten inches tall?

A.   Yes.

Q.   Did you measure him personally?

A.   No.

Q.   That would be hearsay?

A.   Yes.

Transcript at 143-44. Counsel's performance was not constitutionally defective, as alleged. See Strickland, supra.

Hunter alleges in his final ground of ineffective assistance of trial counsel that his lawyers improperly failed to object and move for a mistrial on the basis of improper comments made by the prosecutor regarding his right to remain silent. Hunter claims that the comment improperly shifted the burden of proof to the defense regarding his whereabouts at the time of the offense. The relevant portion of the prosecutor's argument is as follows:

> Much was made of the fact after I asked the question of who lived in this year. (sic) I submit to you, however, that it is an important thing to consider that Mr. Hunter lives about three miles from the place of the offense, three miles. *Do you think that the Defense would have taken pains to point out the fact Mr. Hunter might have lived in Fort Lauderdale, for example? Do you think that they might have used something like that? Is it relevant? Is it something to consider*, the fact that Mr. Hunter lives a mere three miles from the scene of the offense? Is that important? I submit to you that it is.

(Trial Transcript at 533). Hunter specifically challenges the emphasized portion.

-------

Q.   And then I presume you didn't put him on a scale and weigh him?

A.   No.

Q.   That would be hearsay?

A.   Yes.

Q.   You can't say how much he weighed?

A.   Based on the investigation I obtained.

Q.   Nothing you know firsthand?

A.   I didn't personally.

Q.   You don't now if that's seconds, third, fourth, fifth hand information?

A.    No.

(Trial Transcript at 143-144).

"It is well established that a prosecutor may not use the bully-pulpit of a closing argument to inflame the passions or prejudices of the jury or to argue facts not in evidence." United States v. Childress, 58 F.3d 693, 715 (D.C. Cir. 1995), cert. denied, 516 U.S. 1098 (1996). Comments on the failure of the defendant to testify are improper. See Bertolotti v. Dugger, 883 F.2d 1503, 1524 (11 Cir.), cert. denied, 497 U.S. 1032 (1990).

In the Rule 3.850 proceeding the trial court found the instant claim meritless, stating:

> I find that the prosecutor's comment about Fort Lauderdale was a permissible argument and not designed to comment on [Hunter's] right to remain silent.

(Order Denying Motion for Postconviction Relief at 1).  As properly determined by the state courts, when viewing the now-challenged remarks in the context of the evidence admitted at trial and the entire closing argument, it is apparent that the now-challenged comments were a fair comment on the evidence presented at trial and in direct response to the defense. Here the remark, while maybe not a model of prosecutorial argument, was designed to refer the jury to evidence in the case that was favorable to the state. At trial, Detective Miller testified that Hunter lived three miles from the subject convenience store. (Trial Transcript at 130). The defense at trial was one of misidentification and lack of evidence presented by the state to establish beyond a reasonable doubt that Hunter was the one who committed the subject crimes. The defense challenged the victim's identification as not reliable and the testimony of the state witnesses as not believable and not supported by other eyewitness testimony or physical evidence, such as, fingerprints from the crime scene. Also, the prosecutor's comments cannot be characterized as an improper shift of the burden of proof onto Hunter. Again, they were, in fact, in direct response

to the theory presented by the defense and essentially permissible comments on the lack of defense evidence.[29]

It is important to note that any possible prejudice which might have resulted from the comments were cured by the trial court's instructions to the jury. Throughout the trial, the court clearly and correctly instructed the jury that the case must be decided only on the evidence presented at trial and clearly instructed the jury as to the burden of proof. (Record on appeal at 135-36, 138, 139, 140, 141; Trial Transcript at 549). The jury was further instructed that Hunter had a fundamental right not to be a witness in the case, and the fact that he did not testify should not be viewed as an admission of guilt. (Record on Appeal at 140). Before the opening statement and closing argument, the jury was instructed that what the lawyers said was not evidence and should not be considered as such. (Trial Transcript at 8, 500). As indicated above, it is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Since the now-challenged portion of the prosecutor's final argument was appropriate rebuttal to the argument of defense counsel and proper, defense counsel's performance cannot be deemed deficient for failing to object to the subject remarks and move for a mistrial on the basis of the now-challenged comments in that any challenge would not have been unsuccessful.[30] See Ford v. State,

---

[29]Comments made by a prosecutor in an attempt to point out to the jury the lack of evidence and failure of the defense, as opposed to the failure of the defendant, to counter or explain the testimony presented or evidence introduced by the prosecution is not an improper comment on the defendant's failure to testify or a shift in the burden of proof.  See Duncan v. Stynchcombe, 704 F.2d 1213, 1215-16 (11 Cir. 1983).

[30]It is noted that defense counsel did object to other comments and moved for a mistrial, which was denied. (Trial Transcript at 530, 535).

2001 WL 1044912, *3 (Fla. 2001)(holding that a mistrial based on prosecutorial comments is appropriate only where a statement is so prejudicial that it vitiates the entire trial). Counsel has no duty to raise issues which have little or no chance of success. <u>See generally</u>, <u>Card v. Dugger</u>, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues). Moreover, under the totality of the circumstances, including the strength of the evidence of Hunter's guilt, it is apparent that the prosecutor's statements were at worst no more than harmless error. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993), <u>quoting</u>, <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)(a petitioner is entitled to federal habeas corpus relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict). Hunter suffered no prejudice from the alleged deficiency in that he was not deprived of a fundamentally fair trial as a result of the challenged comments in that there is no indication that the comments contributed to the verdict in this case.[31] <u>See</u> <u>Harris v. Moore</u>, 1999 WL 223167, *4 (M.D.Fla. 1999).

In conclusion, contrary to Hunter's allegations, the record reflects that the petitioner received vigorous and able representation more than adequate under the Sixth Amendment standard. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). No

---

[31]The long-standing standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642-45 (1974). <u>See also</u> <u>Davis v. Zant</u>, 36 F.3d 1538, 1545 (11 Cir. 1994)(<u>citing</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 645 (1974)). In assessing whether the fundamental fairness of the trial has been compromised, the totality of the circumstances are to be considered in the context of the entire trial, <u>Hance v. Zant</u>, 696 F.2d 940 (11 Cir.), <u>cert. denied</u>, 463 U.S. 1210 (1983); and "[s]uch a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." <u>Williams v. Weldon</u>, 826 F.2d 1018, 1023 (11 Cir.), <u>cert. denied</u>, 485 U.S. 964 (1988).

error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings has been demonstrated. <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993). Hunter is, therefore, not entitled to federal habeas corpus relief on the above-discussed claims.

D. <u>Ineffective Assistance of Appellate Counsel</u>

Hunter claims that he received ineffective assistance of appellate counsel for three specified reasons (i.e., grounds nine, ten and eleven). These claims were raised in the state habeas corpus proceeding where Hunter was denied relief. <u>See also</u> <u>Hunter v. State</u>, 946 So.2d 27 (Fla. 3 DCA 2007)(table). As indicated above, to prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). The two-prong <u>Strickland</u> test is equally applicable in assessing counsel's performance in appellate proceedings. <u>See</u> <u>Grubbs v. Singletary</u>, 120 F.3d 1174, 1176 (11 Cir. 1997)(applying the <u>Strickland</u> test to a claim of ineffective assistance of appellate counsel). <u>See also</u> <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11 Cir. 1987). The Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues. <u>Jones v. Barnes</u>, 463 U.S. 745 (1983). In considering the reasonableness of an attorney's decision not to raise a particular claim, this Court must consider "all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Eagle v. Linahan</u>, 279 F.3d 926, 940 (11 Cir. 2001), <u>quoting</u>, <u>Strickland</u>, 466 U.S. at 691. Further, in determining whether the failure to raise a claim on appeal resulted in prejudice, the courts must review the merits of the omitted claim

41

and, if it is concluded that the omitted claim would have had a reasonable probability of success, then counsel's performance was necessarily prejudicial because it affected the outcome of the appeal. Eagle, 279 F.3d at 943.

Hunter alleges in ground nine that his appellate lawyer rendered ineffective assistance when he failed to raise on direct appeal the issue the trial court abused its discretion when refusing to hold a Frye-hearing regarding the admissibility of the expert opinion provided by Detective Kmjian regarding the similar characteristic analysis Detective Kmjian testified to regarding the shotgun and backpack. A Frye-hearing[32] was requested at the time of the motion in limine hearing regarding Detective Kmjian's testimony, and the trial court denied the request, finding that no new scientific analysis was involved in this case. See Transcript of pretrial proceedings conducted on July 15, 2002, at 165-67

Petitioner's claim is meritless. As determined by the trial court, challenges to the methodology employed by Detective Kmjian regarding his analysis and comparison of photographs go to his credibility and it is properly left to the jury to determine what

---

[32]The Fyre court held that while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923). As opposed to the federal courts where Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993) is controlling, Florida courts utilize the Frye test to determine if expert scientific opinion is admissible. See Flanagan v. State, 625 So.2d 827, 829 (Fla. 1993). See also Hadden v. State, 690 So.2d 573, 576 (Fla. 1997)(stating that "[t]his test requires that the scientific principles undergirding this evidence be found by the trial court to be generally accepted by the relevant members of its particular field."). In Florida, the courts will only utilize the Frye test in cases where an expert attempts to render an opinion that is based upon new or novel scientific evidence or techniques. See, e.g., U.S. Sugar Corp. v. Henson, 823 So.2d 104, 109 (Fla. 2002); Brim v. State, 695 So.2d 268, 271-72 (Fla. 1997).

weight, if any, to give to the expert's testimony. As aptly pointed out by the respondent, appealing the trial court's denial of Petitioner's request for a *Frye* hearing would have lacked merit as *Frye* hearings are not required in Florida where the expert's opinion is based on personal training and experience. Johnson v. State, 933 So. 2d 568, 570 (Fla. 1st DCA 2006). Moreover, a *Frye* hearing is not required where the opinion being provided is not new and no novel scientific theories are at issue, such as in this case. Id. See also Spann v. State, 857 So.2d 845, 852 (Fla. 2003). Detective Kmjian's opinion testimony was based on his specialized training from the FBI. Surveillance video comparisons are not new or novel. Kennedy v. State, 853 So. 2d 571, 573 (Fla. 4 DCA 2003)(holding that similar enhancement of images and their use in comparison analysis not new or novel under *Frye*). Further, the admission of the photographs and still images were clearly within the trial court's discretion. Dolan v. State, 743 So. 2d 544, 546 (Fla. 4th DCA 1999). The request for the *Frye* hearing was properly denied pursuant to Florida law principles and any appeal would have lacked merit. See  U.S. Sugar Corp. v. Henson, 823 So.2d 104, 109 (Fla. 2002).

Accordingly, even if this Court were to find that appellate counsel's performance could in any way be deemed deficient for failing to raise the subject issue on direct appeal, Hunter would not be entitled to relief in that he suffered no prejudice from the alleged deficiency because the underlying claim is meritless. Since the omitted claim would not have been successful if raised on appeal, appellate counsel's performance did not affect the outcome of the appeal. Appellate counsel, therefore, did not render constitutionally ineffective assistance, as alleged in ground eight. See Jones v. Barnes, 463 U.S. 745; Eagle v. Linahan, 279 F.3d at 943-44 (requiring a showing of some likelihood of a more

43

favorable result on appeal had appellate counsel raised the subject claim). See also Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

Hunter claims in ground ten that he received ineffective assistance of appellate counsel, because his lawyer failed to raise as an issue on direct appeal the improper denial of his motion for limine regarding Williams-rule evidence. In ground eleven, he claims that appellate counsel improperly failed to raise as an issue on direct appeal that the Williams-rule evidence was the feature of the trial in violation of his due process rights. As determined above in connection with ground seven, the Williams-rule evidence was properly admitted. Since the omitted claims would not have been successful if raised on appeal, appellate counsel's performance did not affect the outcome of the appeal. Consequently, appellate counsel did not render constitutionally ineffective assistance, as alleged in grounds ten and eleven. See Jones v. Barnes, 463 U.S. 745; Eagle v. Linahan, 279 F.3d at 940, 943, citing, Strickland, 466 U.S. at 691. See also Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990)(holding that appellate counsel is not required to raise meritless issues).

In conclusion, appellate counsel's performance was not ineffective for failing to raise the subject three claims on direct appeal. See Grubbs v. Singletary, 120 F.3d 1174, 1176 (11 Cir. 1997). Accordingly, the state appellate court's denial of Hunter's petition for writ of habeas corpus, where the subject ineffective assistance of appellate counsel claims now raised in this federal petition were presented is not in conflict with clearly established federal law or based on an unreasonable determination of the facts,

and its result should not be disturbed.[33] 28 U.S.C. §2254(d)(1); Williams v. Taylor, supra.

## VII. Evidentiary Hearing

Petitioner's contention that he is entitled to an evidentiary hearing in this Court on his grounds of ineffective assistance of trial counsel, or any other ground, is meritless. Section 28 U.S.C. §2254(e)(2) provides that a court shall not conduct an evidentiary hearing unless a petitioner failed to develop a claim in state court, provided that the claim relies on a new rule of constitutional law or on "a factual predicate that could not have been previously discovered through the exercise of due diligence" and the facts would "establish by clear and convincing evidence" the petitioner's actual innocence. See Williams v. Taylor, 529 U.S. 420, 433-37 (2000). Hunter has failed to satisfy the statutory requirements in that he has not demonstrated the existence of any factual disputes that warrant a federal evidentiary hearing.

## VIII. Conclusion

It is recommended that this petition for habeas corpus relief be denied.

---

[33]As was true in the Rule 3.850 proceeding, the appellate court's decision in the state habeas corpus proceeding is entitled to deference under the AEDPA for purposes of this federal habeas corpus proceeding although the state court did not issue an opinion providing any discussion with respect to the subject claim. Wright v. Secretary for Dept. of Corrections,278 F.3d 1245 (11 Cir. 2002), cert. denied, 538 U.S. 906 (2003).

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 2nd day of January, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Eugene Hunter, Jr., <u>Pro</u> <u>Se</u>
     DC# M38893
     Jackson Correctional Institution
     5563 10th Street
     Malone, FL 32445-3144

     Lisa A. Davis, AAG
     Department of Legal Affairs
     444 Brickell Avenue
     Suite 650
     Miami, FL 33131