**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 07-21372-CIV-LENARD/WHITE

**EUGENE HUNTER, JR.**,

        Petitioner,

vs.

**BILL McCOLLUM,**

        Respondent.

_____/

**ORDER ADOPTING REPORT AND RECOMMENDATION (D.E. 23);
ADOPTING SUPPLEMENTAL REPORT (D.E. 93) AND DENYING PETITION
FOR WRIT OF HABEAS CORPUS (D.E. 1)**

**THIS CAUSE** is before the Court on the Report and Recommendation (D.E. 23) and

the Supplemental Report (D.E. 93) of Magistrate Judge Patrick A. White, issued on January

23, 2008, and May 26, 2010, respectively. Petitioner Eugene Hunter filed Objections to the

Report on March 11, 2008 (D.E. 31) and to the Supplemental Report on June 16, 2010 (D.E.

96). Upon review of the Report, Supplemental Report, the Objections and the record, the

Court finds as follows.

**I.     Factual and Procedural Background**[1]

    On April 26, 2001, Lucien Germaine was working as a cashier at a convenience store

in Miami, Florida, when a man entered the store with a backpack and a short-barreled

shotgun. Germaine put his hands in the air and was pushed to the floor by the man holding

---

[1]     The Magistrate Judge's Report (at 6-7) and the Supplemental Report (at 4-8)
contain a thorough recitation of the facts and testimony at Petitioner's trial.

the gun.  The man took the cash from the register. The robbery was captured on videotape.

On April 30, 2001, Petitioner was arrested on unrelated charges and a search incident to the arrest produced a sawed-off shotgun and a blue backpack between Petitioner's legs on the floor of the vehicle.

On May 11, 2001, Germaine was shown a photographic lineup by the police. Germaine selected Petitioner's picture from the photographic array and he positively identified Petitioner as the man who had robbed him at gunpoint.

Petitioner was charged with armed robbery and various firearm-related offenses.  At his trial, Detective Kumjian of the Miami-Dade County forensic video unit testified that there were similarities between the backpack and the shotgun in the surveillance videotape and the backpack and the shotgun that Petitioner possessed at the time of his arrest.  The evidence against Petitioner at trial was the out-of-court photo identification by Germaine and the testimony of Detective Kumjian.  The victim was unable to identify Petitioner in court as the perpetrator.  The defense at trial was one of misidentification.

Petitioner was convicted by the jury on counts of armed robbery with a firearm, possession of a short-barreled shotgun and carrying a concealed firearm. He was sentenced to a life term of imprisonment on the armed robbery conviction, a fifteen-year term on the possession of an illegal weapon conviction and a five-year term on the carrying a concealed weapon conviction.  The terms were imposed to run concurrently.

Petitioner appealed his convictions, raising the identical claims presented here as grounds one and two, as well as a third unrelated claim.  (Volume One to Appendix to

Response to Petition at 2-30.)  The convictions and sentences were affirmed *per curiam* by the appellate court without written opinion.  *Hunter v. State*, 871 So.2d 887 (Fla. 3d DCA 2004).

Petitioner also pursued postconviction relief, first filing a pro se motion pursuant to Florida Rule of Criminal Procedure 3.850 (subsequently amended) – raising the same claims presented as grounds three, four, five, six, seven, twelve and thirteen in this federal petition – as well as other ineffective assistance of trial counsel claims. (Volume Two to Appendix to Response to Petition at 73-97, 107-69.) After reviewing the state's responses and the record in the case, the trial court summarily denied the motion, as amended, in thorough and well-reasoned written orders. (Volume Two to Appendix to Response to Petition at 98-106, 171-85, 186-88, 189-91.) After proceedings had concluded in the trial court, Petitioner took an appeal from the trial court's rulings and the denial of postconviction relief was affirmed in a decision without written opinion.  *Hunter v. State*, 952 So.2d 1199 (Fla. 3d DCA 2007).

In the interim, Petitioner also filed a pro se petition for writ of habeas corpus with attached exhibits in the Florida Third District Court of Appeal, alleging that he received ineffective assistance of appellate counsel for the same reasons presented here as grounds nine, ten and eleven, as well as an additional unrelated claim.  (Volume Three to Appendix to Response to Petition at 321-55, 362-74.)  After receiving responses from the state and a reply from the petitioner, the Florida Third District Court of Appeal denied the petition without written opinion.  (Volume Three to Appendix to Response to Petition at 358-96.) *See also Hunter v. State*, 946 So.2d 27 (Fla. 3d DCA 2007).  Petitioner also pursued a second

pro se Rule 3.850 motion in the trial court, raising the same ineffective assistance of trial counsel claim presented as ground eight here. (Volume Four to Appendix to Response to Petition at 404-26). The state filed a response, asserting that the motion should be denied as an improper successive motion in that the claim should have, and could have, been raised in the initial Rule 3.850 motion. (*Id.* at 434-36.) The state did not address the merits of the claim. (*Id.*) The trial court summarily denied the motion without explanation, and denied Petitioner leave to file a reply. (*Id.* at 437, 438.) The trial court's ruling was affirmed *per curiam* on appeal in a decision without written opinion. *Hunter v. State*, 942 So.2d 888 (Fla. 3d DCA 2006). Not long after all state court proceedings concluded, Petitioner instituted the instant federal habeas corpus proceeding in this Court.

### A.    The May 26, 2010 Report and Recommendation

#### 1.    *Claim One: Fourth Amendment Violation*

Petitioner's first claim is that the trial court erred in denying his motion to suppress the evidence seized at the time of his arrest because the investigatory stop was not supported by reasonable suspicion, thereby violating his constitutional rights pursuant to the *Fourth* and *Fourteenth Amendments* to the Constitution. The Magistrate Judge found that Petitioner's claim could not be raised in his Petition, as it is well settled that federal habeas corpus relief is not available to a state prisoner on the ground that a conviction was based on evidence obtained in violation of the *Fourth Amendment*, if the state provided an opportunity for full and fair litigation of the *Fourth Amendment* claim. (*See* D.E. 23 at 8.) The Magistrate Judge found that the trial court had held a thorough pretrial hearing on the

4

admissibility of the evidence and found that the evidence was admissible.  (*Id.* at 8-9.) Petitioner appealed the denial of the motion to suppress and this appeal was rejected. Accordingly, the Magistrate Judge found that he had a full and fair opportunity to litigate his fourth amendment claim in state court and therefore this claim failed.  (*Id.* at 9.)

       2.    *Claim Two: Improper Admission of Testimony at Trial*

       Petitioner's second claim is that his constitutional rights were violated when the trial court permitted Detective Kumjian to testify at trial that the shotgun and backpack found in Petitioner's possession at the time of his arrest had "similar" characteristics as the shotgun seen being used in the video tape recording of the instant robbery and the backpack carried by the perpetrator.  The Magistrate Judge found that Petitioner's claim was barred because, while he did present the state court with the facts underlying any possible federal due process claim, his brief on direct appeal failed to indicate that he was seeking relief under any specific federal constitutional guarantee. (*Id*. at 10-11.) The Magistrate Judge found that since no procedural avenue remained available in Florida which would allow Petitioner to return to the state forum and exhaust the subject claim, the claim was procedurally defaulted from federal review.  (*Id*. at 11.)

       Further,  Petitioner could not avail himself of an exception from this procedural default for unexhausted claims because he could not demonstrate cause for the default or actual prejudice.  (*Id*.)  The Magistrate Judge found of particular import that the trial court had held a pre-trial hearing on Petitioner's motion *in limine* to exclude the subject testimony and found in pertinent part that Detective Kumjian had training in identifying objects from

photographs taken from videos, which was different from still photographs. (*Id.* at 13.) The Magistrate Judge further found that the explanation provided by Detective Kumjian of the comparison photographs would assist the jury in determining that a black line in the photograph was being held in a consistent manner as a shotgun and that his testimony would go to the weight of the evidence with the jury deciding whether to believe the officer's testimony. (*Id*) The Magistrate Judge noted that state evidentiary rulings are afforded wide latitude in federal habeas proceedings and such rulings are subject to harmless error analysis. (*Id*. at 14.) The Magistrate Judge found that, consistent with the trial court's ruling, Detective Kumjian was a qualified expert who possessed specialized knowledge and training in identifying certain attributes of still images taken from video surveillance which, although the lay person could see the "black line" in the picture, the lay person could not know that the "black line" depicted a shotgun. (*Id*. at 15.) Further, the Magistrate Judge found that, even if admission of the testimony was improper, review of the other evidence admitted against Petitioner, which included a positive pretrial identification from the victim that Petitioner was the perpetrator, strongly demonstrated his guilt and thus, the challenged testimony, even if erroneous, did not substantially influence the jury. (*Id*. at 15-16.)

3.    *Claims Three, Four, Five, Six, Seven, Eight, Twelve and Thirteen: Ineffective Assistance of Trial Counsel*

The Magistrate Judge began his analysis of Petitioner's ineffective assistance of counsel claims by noting that, with the exception of his eighth claim, the trial court's determination that Petitioner was not entitled to postconviction relief on his claims of

ineffective assistance of counsel, affirmed on appeal, was not in conflict with clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. (*Id.* at 17.) Accordingly, pursuant to 28 U.S.C. § 2254(d), the Magistrate Judge found that relief on these claims must be denied.

### a.    Claim Three

Petitioner alleges in ground three that his lawyers rendered ineffective assistance when they failed to file a motion to suppress the out-of-court identification evidence based on the suggestiveness of the identification procedure. Petitioner complains that the victim had been shown a single photograph of a person wearing a backpack before the formal photographic identification procedure took place.  Petitioner further maintains that the victim's identification was unreliable, because the description of the perpetrator was often inconsistent and conflicting and that the victim had been unable to identify Hunter as the perpetrator during the trial proceeding. The identical issue was raised and rejected in the Rule 3.850 proceeding.  Because the Magistrate Judge found that there was no legal basis upon which to suppress the out-of-court identification evidence –  the pretrial procedures employed by the detective in identifying Petitioner as the armed robber were not unlawfully suggestive, and the pretrial identification was not unreliable – the Magistrate Judge found that there was no constitutional violation. (*Id.* at 18.)   Specifically, the Magistrate Judge found that:

> The robbery here took place in a well-lit store by an armed man who stood no more than twenty feet from the victim-cashier before forcing him to the ground.  *See* Trial Transcript at 34-47.  The armed robber's face was not

7

hidden or concealed in any way and the victim was able to see at least part of his face three times during the incident. *Id.* Shortly after the robbery, the police arrived and the victim gave a description of the perpetrator. *Id.* at 35. Detective Miller compiled a photographic array, consisting of six photographs of males with similar characteristics. *Id.* at 132-34. Approximately two weeks after the incident, Detective Miller showed the victim the photographic array, which included Hunter's photograph. Within seconds of viewing the photographs, the victim selected Hunter's picture, identifying with certainty that person as the armed robber. *Id.* at 39-40, 134-39. Detective Miller had not met with the victim between the time of the robbery and the photographic lineup procedure and he had not shown him any photographs before conducting the instant lineup. *Id.* at 134-35. Further, before conducting the identification procedure, the detective had not advised the victim that Hunter had been arrested and that a shotgun had been found during the arrest. Id. at 135. Also, Hunter had not been told that the robber was included in the photographic lineup. *Id.* at 136-37.

Review of the trial testimony of the victim who made the identification and the testimony of the detective who was involved in the pretrial identification procedure reveal that the photo identification process used was not unnecessarily suggestive and there is no indication that the victim had seen other photographs before the lineup procedure. Even if the victim had somehow been shown a picture of a man with a backpack, which Detective Kmjian posed for to use as a comparable photograph in his similarity analysis, the picture would not have assisted the victim in selecting Hunter's face from a line-up. *Id.* at 490-92. Since there was no substantial likelihood of misidentification, and the victim's pretrial identification was unequivocal, any motion to suppress would not have been successful.

(D.E. 23 at 19-20.)  The Magistrate Judge noted that although the victim did not identify Petitioner at trial, his inability to do so did not render counsel's performance ineffective, as there was testimony at trial that Petitioner's appearance had changed since the time of his arrest until trial and the reliability of the victim's identification of Petitioner was a matter for the jury. (*Id*. at 21.)  Further, the Magistrate Judge documented defense counsel's attempts at trial to discredit the victim's identification and to challenge the thinness of the

government's case: "While the jury rejected the defense presented, as was the jury's prerogative, and instead believed the evidence admitted by the state and the testimony of the state witnesses, Petitioner has not demonstrated that counsel's judgment to forego a motion to suppress the allegedly tainted identification was so patently unreasonable that no competent attorney would have chosen it." (*Id*. at 21-22.)  Further, the Magistrate Judge found that Petitioner could not demonstrate that he suffered prejudice as a result of counsel's failure to pursue a motion to suppress because there was more than sufficient evidence that Petitioner was the person who committed the subject crimes.  (*Id*. at 22.)

   b. *Claim Four*

   Petitioner alleges in ground four that his lawyers' performance was constitutionally ineffective, because they failed to call Officer Toledo as a defense witness at trial to testify about the victim's description of the perpetrator. Hunter states that the victim provided Officer Toledo with one description of the perpetrator and the clothing worn, a different description to another officer, and a third description at trial.  The Magistrate Judge found that decisions whether to call a particular witness or not to cross-examine certain witnesses are generally questions of trial strategy that will not be second-guessed on habeas review. (*Id*. at 23.)  The Magistrate Judge further found that, "It is clear from review of the record that trial counsel's decision not to call Officer Toledo as a witness at trial was a matter of trial strategy. . . . The decision not to call Officer Toledo was mutual, and based on the potential damaging testimony that the officer would have provided, especially on cross-examination by the state, even if the subject inconsistent descriptions could have been

revealed during the examination." (*Id*. at 23-24.)  The Magistrate Judge further found that, at best, the officer's testimony would have been cumulative to trial counsel's strong cross-examination of the victim and Detective Miller, during which trial counsel revealed to the jury the different descriptions given by the victim. (*Id*. at 24.)

        *c.*    *Claim Five*

Petitioner claims in ground five that his lawyers improperly failed to impeach the victim's trial testimony with his prior statements to the police concerning the description of the perpetrator.  The Magistrate Judge found that this claim was refuted by the record: "Review of the trial transcript indicates that defense counsel fully cross-examined the victim regarding the identification he provided the police immediately after the incident, attempting to demonstrate to the jury that the victim's identification of Hunter as the perpetrator was not reliable in that his description provided was uncertain and inconsistent." (*Id*. at 25.)

        *d.*    *Claim Six*

Petitioner claims in ground six that he received ineffective assistance of trial counsel, because his lawyers denied him the right to participate in his own defense; specifically, Petitioner asserts that counsel failed to provide him before trial all discovery materials in the case, which included copies of the depositions, surveillance video tape recordings and still photographs.  As a result, he could not advise counsel that (1) the victim's identification had been tainted as it was provided after being shown an individual picture of Petitioner and that counsel should file a motion to suppress as a result; and (2) Officer Toledo should be called as a defense witness, and he could not assist counsel in the decision whether to call an expert

10

witness on the issue of the photographs and/or whether to go to trial or accept a plea.  Based

on a review of the record, the Magistrate Judge found Petitioner's claim meaningless:

> Hunter was expressly asked by the court immediately after the state had rested
> whether his lawyers had done everything for him that he had asked them to do
> and Hunter unhesitatingly responded, "Yes they have." (Trial Transcript at
> 497). When specifically asked whether his counsel had filed all motions,
> documents and pleadings that he had wanted them to file, he also answered
> affirmatively. Id. Thus, as was true with regard to calling Officer Toledo as a
> state witness, Hunter clearly agreed with defense counsel's strategy and
> defense presented at trial or, at least acquiesced, with trial counsel's decisions.
> *Id.* at 497-500.

(D.E. 23 at 27.)

The Magistrate further found that Petitioner did not suffer prejudice, even if he did not

receive all discovery materials.  (*Id*. at 28.)

      *e.*    *Claim Seven*

Petitioner claims in ground seven that his lawyers rendered ineffective assistance

when they failed to object and move for a mistrial when the Williams-rule evidence –

evidence obtained pursuant incident to Petitioner's unrelated arrest on April 30, 2001 –

became a feature of the trial and when they failed to preserve the issue for appellate review.

The Magistrate Judge found that Petitioner's claim was without merit as it was refuted by the

record.  (*Id*.)  Petitioner's trial counsel filed a pretrial motion *in limine* to exclude the

Williams-rule evidence obtained pursuant to his unrelated arrest, a pretrial hearing was held

on the motion and the motion was granted in part as to some of the evidence.  Further,

immediately before the evidentiary portion of the trial commenced and throughout the trial

proceeding, trial counsel objected to the admission of the subject evidence and a mistrial was

11

sought.  Thus, the Magistrate found that, "In this case, before and during the trial, trial counsel vigorously attempted to prevent the presentation of the subject evidence. As such, counsel's performance cannot be deemed deficient."  (*Id*. at 30.)  Further, the admitted evidence was admissible because it was inextricably intertwined with the subject criminal incident, and its use was brief and limited to the permissible purpose of establishing identification and linking the evidence to Petitioner and nothing more.  (*Id*. at 31.)  Finally, the Magistrate Judge found that Petitioner was not prejudiced by the admission of the now-challenged evidence in that the jury was instructed by the court to only consider the Williams-rule evidence for the limited purpose of identification.  (*Id*. at 32.)

       *f.*    *Claim Eight*

Petitioner claims in ground eight that his lawyers rendered ineffective assistance when counsel failed to challenge a defective probable cause affidavit and request a *Franks* hearing. This claim was originally presented in Petitioner's second Rule 3.850 motion, and, in response, the state did not address the merits of the claim and solely asserted that the motion should be denied as an improper successive motion as that the claim should have, and could have, been raised in the initial Rule 3.850 motion.  The claim was denied by the trial court without written opinion.  The Magistrate Judge found that this claim is procedurally barred from federal habeas corpus review in that the state courts applied an express procedural bar. (*Id*. at 33.)   In addressing this claim, the Magistrate Judge noted that Florida courts consistently apply the rule that a second or successive post-conviction motion which asserts new and different grounds than a defendant's first motion is an abuse of process unless the

defendant shows justification for his failure to raise the new ground in his first post-conviction motion.  (*Id.*)

### g.    *Claim Twelve*

Petitioner claims in ground twelve that he received ineffective assistance of trial counsel, because his lawyers failed to object to hearsay evidence regarding his alleged height and weight at the time of the offenses.  Petitioner points to Detective Robert Miller's testimony that Petitioner was 5'10" and approximately 230 pounds at the time of his arrest. Petitioner contends that he was two inches taller and thirty pounds lighter at the time of the arrest.  In rejecting Petitioner's claim, the Magistrate Judge found that:

> Review of the record reveals that the detective's testimony was elicited in conjunction with the victim's earlier inability to make an in-court identification of Hunter as the perpetrator, advising the jury that since the time of his arrest Hunter's appearance had changed in that he had a dramatic weight loss and the length of his hair was different. Since the evidence was appropriate lay witness opinion testimony and since Detective Miller had personally interacted with Hunter, the evidence was not inadmissible hearsay and was properly admitted, as determined by the trial court.

(*Id.* at 36.)  The Magistrate Judge further found that even if the evidence was inadmissible hearsay, the failure to object was a reasonable tactical decision.  (*Id.*)

Petitioner alleges in his final ground of ineffective assistance of trial counsel that his lawyers improperly failed to object and move for a mistrial on the basis of improper comments made by the prosecutor regarding his right to remain silent. Petitioner claims that the comment improperly shifted the burden of proof to the defense regarding his whereabouts at the time of the offense.  The relevant portion of the prosecutor's argument is as follows:

> Much was made of the fact after I asked the question of who lived in this year. (sic) I submit to you, however, that it is an important thing to consider that Mr. Hunter lives about three miles from the place of the offense, three miles. Do you think that the Defense would have taken pains to point out the fact Mr. Hunter might have lived in Fort Lauderdale, for example? Do you think that they might have used something like that? Is it relevant? Is it something to consider, the fact that Mr. Hunter lives a mere three miles from the scene of the offense? Is that important? I submit to you that it is.

(Trial Transcript at 533). The magistrate found that the comment was not improper, because, when viewing the now-challenged remarks in the context of the evidence admitted at trial and the entire closing argument, it is apparent that the now-challenged comments were a fair comment on the evidence presented at trial and in direct response to the defense. (*Id*. at 38.) The Magistrate Judge further found that any possible prejudice resulting from the comments were cured by the trial court's instructions to the jury that the case must be decided only on the evidence presented at trial and instructions regarding the burden of proof. (*Id*. at 39.) "Since the now-challenged portion of the prosecutor's final argument was appropriate rebuttal to the argument of defense counsel and proper, defense counsel's performance cannot be deemed deficient for failing to object to the subject remarks and move for a mistrial on the basis of the now-challenged comments in that any challenge would not have been unsuccessful." (*Id*.)

4.     *Claims Nine, Ten, and Eleven: Ineffective Assistance of Appellate Counsel*

Petitioner claims in grounds nine, ten, and eleven that he received ineffective assistance of appellate counsel. Petitioner alleges in ground nine that his appellate lawyer rendered ineffective assistance when he failed to raise on direct appeal the issue that the trial

court abused its discretion when refusing to hold a *Frye* hearing regarding the admissibility of the expert opinion provided by Detective Kumjian on the similar characteristic analysis he testified to regarding the shotgun and backpack.  The Magistrate Judge concurred with the argument that appealing the trial court's denial of Petitioner's request for a *Frye* hearing would have lacked merit as *Frye* hearings are not required in Florida where the expert's opinion is based on personal training and experience.  (*Id.* at 43.)  Moreover, the Magistrate Judge found that a *Frye* hearing is not required where the opinion being provided is not new and no novel scientific theories are at issue, such as in this case.

Petitioner claims in ground ten that he received ineffective assistance of appellate counsel because his lawyer failed to raise as an issue on direct appeal the improper denial of his motion *in limine* regarding the *Williams* rule evidence. In ground eleven, he claims that appellate counsel improperly failed to raise as an issue on direct appeal that the *Williams* rule evidence was the feature of the trial in violation of his due process rights.  The Magistrate Judge rejected both of these claims: "As determined above in connection with ground seven, the *Williams*-rule evidence was properly admitted. Since the omitted claims would not have been successful if raised on appeal, appellate counsel's performance did not affect the outcome of the appeal. Consequently, appellate counsel did not render constitutionally ineffective assistance, as alleged in grounds ten and eleven."  (*Id.* at 44.)

    5.    *Evidentiary Hearing*

Finally, the Magistrate Judge found that Petitioner failed to demonstrate the existence of any factual disputes that would warrant a federal evidentiary hearing.  (*Id.* at 45.)

15

As such, the Magistrate Judge recommended that the Petition be denied in full.

**B.     Petitioner's Objections, the Court's Order to Remand and the Evidentiary Hearing**

Petitioner filed seventy-six pages of handwritten objections to the Report.  Upon review, the Court agreed with the Magistrate Judge's findings and recommendations with exception to claim three.

*1.     Order Remanding Petition For Evidentiary Hearing*

On September 11, 2009, this Court found that an evidentiary hearing was necessary to further develop the record on claim three and remanded the matter to the Magistrate Judge. (Order Remanding Petition, D.E. 49.)  The Order provided, in part:

> [Lucien] Germaine, the victim/cashier, stated a number of times in his deposition that he was shown a picture of man wearing a backpack before he identified Petitioner in the photo lineup. (*See, e.g.*, Germaine Deposition at 10, 29-30.)  The issue was barely addressed at trial.  The only time that the issue was brought up was during opening statements when the prosecutor told the trial judge at sidebar that the defense might argue that the victim/cashier was shown a photo of a man wearing a backpack prior to the photo lineup. (Trial Tr. at 17.)  The prosecutor argued, however, that the victim/cashier had actually not seen such a photograph because he "talked to him after the deposition and that did not happen." (*Id*.)  In response, defense counsel stated "I do not anticipate asking that question.  I didn't notice -- I didn't think it was something that was gonna be that affective [sic]." (*Id*. at 17-18.) The issue was not raised again and defense counsel did not cross-examine the victim/cashier on the matter.
>
> Additionally, while Magistrate Judge White's found that even if the police showed Germaine a photo prior to his identification, this was harmless because the photo was of Detective Kumjian, there appears to be a question regarding whether the photo was actually of Detective Kumjian.  Detective Kumjian was the forensic analyst assigned to prepare the convenience store surveillance video for admission as evidence at trial.  He took a photo of himself wearing

16

a backpack to demonstrate the similarities between the backpack in the video and a backpack that Petitioner was holding when he was arrested for possession of a sawed-off shotgun. However, the photo of Detective Kumjian may have been taken months after the cashier/victim was shown the photo lineup, thereby making it impossible that the cashier/victim was referring to the photo of Detective Kumjian in his deposition testimony. Moreover, Petitioner contends in a sworn declaration that, during his interrogation following his arrest, the detectives took pictures of him for use in the lineup, including one in which he was wearing a backpack. (*See* D.E. 32.)

. . . .

 The Court finds that further development of the record on the issue of the allegedly suggestive photo lineup is necessary to determine whether Petitioner's counsel was ineffective for failing to move to suppress Germaine's identification or to cross-examine Germaine regarding the events leading to his identification of Petitioner. Accordingly, an evidentiary hearing on the matter by Magistrate Judge White is warranted. As such, it is hereby **ORDERED AND ADJUDGED** that the Petition is remanded to Magistrate Judge White for an evidentiary hearing on claim three consistent with this Order.

(*Id.* at 5-7 (emphasis in original).)

> 2.    *The Evidentiary Hearing*

Magistrate Judge White held an evidentiary hearing on March 25, 2001 (D.E. 89) at which Paul Kamensky, Officer Toledo and Detectives Hladky, Kumjian and Miller testified, evidence was presented and arguments made by both sides. Magistrate Judge White denied Petitioner's request to take telephonic testimony from the prosecutor, Assistant State Attorney Christopher Gahm.

**C.    The Supplemental Report**

Petitioner's third claim for relief alleges that he was denied constitutionally effective assistance of counsel when his trial counsel, Kamensky, neglected to file a

17

motion to suppress Germaine's out-of-court identification as tainted after Germaine stated

at deposition that he was shown a picture of a man wearing a backpack before the photo

array.  At the evidentiary hearing, Petitioner expanded his claim to include trial counsel's

failure to move to suppress the out-of-court identification based on Germaine's being

shown a photograph of a "guy with backpack," consisting of a single sheet displaying two

Polaroid photographs – one of Petitioner and one of a backpack.  The Magistrate Judge

also considered the claims of ineffective assistance of counsel in not moving to suppress a

suggestive photo array, failing to cross-examine Germaine as to his out-of-court

identification.  The Magistrate Judge finds no merit in any of Petitioner's claims.

The Supplemental Report first finds that Petitioner's claim that trial counsel was

not ineffective for failing to suppress Germaine's out-of-court identification following his

being shown a photograph of a person wearing a backpack before the identification

procedure lacks evidentiary support in the record.  (Supp. Report at 26.)  This finding is

based on Hladky's testimony that he never photographed Petitioner wearing a backpack,

Miller testifimony that he had not received such a photograph and Kamensky's testimony

that during his representation, Petitioner never told him he had been photographed

wearing a backpack.  (*Id*. at 26-27.) Had Kamensky heard such a statement, he would

have moved to compel the state to produce this photograph.  (*Id*. at 27.)  The Magistrate

finds the testimony of Hladky, Miller and Kamensky credible and that trial counsel could

not have been ineffective for failing to file a non-meritorious motion.  (*Id*., citing *Knowles*

*v. Mirzayance*, 556 U.S. 111, ___ (2009); *Chandler v. Moore*, 240 F.3d 907, 917 (11th

18

Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).)

The Magistrate Judge similarly finds that Petitioner's slightly amended claim that Germaine was shown a photograph of a "man with backpack" prior to his photographic identification to lack evidentiary support.  At the hearing, Miller unequivocally testified that he was the only officer present at the photographic lineup, he conducted the lineup and he did not show Germaine any photographs before the lineup.  (Supp. Report at 27-28; Evid. Hearing 119:16-120:6.)  His testimony here is consistent with that at trial and his deposition.  (Supp. Report at 28.)  Neither Hladky nor Kumjian met with Germaine or showed him photographs.  (*Id*.) Furthermore, the Magistrate Judge finds that the photographs of man wearing a backpack were of Kumjian, taken after July 2, 2002, long after Germaine's photo identification.  (*Id*.)  Crediting the testimony of Miller, Hladky and Kumjian as truthful, the Supplemental Report finds that Germaine was not shown any photographs prior to his identification of Petitioner in the photo array on May 11, 2001. (*Id*. at 29.)   Furthermore, the Magistrate Judge is influenced by the prosecutor's statement at sidebar that he had spoken to Germaine after his deposition and Germaine told him that he was not shown a picture of a person with a backpack before the photographic array.  (*Id*. at 30.)

The Supplemental Report concludes – regarding the "man with backpack issue" – that Petitioner's trial counsel made thorough investigation of this case and had no basis upon which to pursue a motion to suppress.  (*Id*. at 31-32.)  Even if he did, Petitioner cannot show prejudice from trial counsel's failure as the motion would have been denied.

*See Knowles*, 556 U.S. at ___.

Petitioner's claim that the photo array was unduly suggestive is also found unpersuasive.  The Supplemental Report finds that the Petitioner's picture within the array did not stand out, Germaine's identification was reliable under the totality of circumstances and the procedures leading up to the identification did not create a substantial likelihood that Germaine would misidentify Petitioner.  (*See* Supp. Report at 31-37 (citations omitted).)

Finally, the Supplemental Report finds that trial counsel did not fail to adequately cross-examine Germaine on the issue of identity during the deposition and at trial; even if he had, the record now before the Court reveals that a motion to suppress would not have been successful.  (*Id*. at 39.)  The Magistrate Judge notes that Germaine, to the surprise of the state and Petitioner's counsel, could not identify Petitioner as the armed robber at trial.  (*Id*. at 42 ("The defense here could not have asked for more from the victim.") To have cross-examined Germaine differently or more extensively could have caused the state to rehabilitate Germaine's out-of-court identification, made just days after the robbery.  (*Id*.)  In light of the cross-examination of Germaine, motions to suppress and *in limine* seeking to exclude evidence of the shotgun and backpack at trial, the Supplemental Report finds that trial counsel conducted his cross examination consistent with clearly reasonable trial strategy.  (*Id*. at 43 (citing *Strickland v. Washington*, 466 U.S. 668 (1984); *Julien v. Hendricks*, 2005 WL 2290287, at ** 15-16 (D.N.J. Sept. 20, 2005) (holding that trial counsel's performance was not constitutionally deficient when he failed to cross-

examine an eye witness on an out-of-court identification where the witness could not make an in-court identification).)  The Supplemental Report finds that even if this failure was deficient, Petitioner cannot satisfy the prejudice prong of *Strickland* in light of counsel's thorough cross-examination of other witnesses and strong closing argument, concluding that the outcome would not have been different.  (*Id*.)

The Magistrate Judge recommends denial of claim three, and consequently, the entire Petition.  (Supp. Report at 44.)

### D.  Objections to the Supplemental Report

Petitioner takes Objection to the factual findings and conclusions of the Supplemental Report.

First, he claims that Germaine clearly stated at his deposition that he was shown pictures before he was asked to make an identification in a photographic lineup. Petitioner extrapolates this from Germaine's deposition testimony, inferring that because he was shown a picture no later than two weeks after the April 26, 2001 robbery, it must have occurred prior to the photo array on May 11, 2011.  (Objections at 3-4.)  In support, Petitioner argues that the prosecutor, ASA Gahm, confirmed Germaine's deposition testimony (but then refuted it) at sidebar.  (*Id* at 5-6.)

Petitioner next contends that this Court, in its Order Remanding for Evidentiary Hearing, has already found that Germaine testified he was shown photographs before he was shown the photo lineup.  (*Id*. at 6.)  The Magistrate Judge's finding to the contrary is therefore inconsistent with this Court's earlier finding.  (*Id*. at 7.)

He also argues that the state trial court's factual determination made at sidebar regarding Germaine's deposition testimony must be afforded a statutory presumption of correctness by 28 U.S.C. § 2254(e)(1).  (Objections at 7 (citing *Burden v. Zant*, 498 U.S. 433, 436 (1991).)  The Court must therefore presume this factual finding to be correct and decline to adopt that of the Supplemental Report. (Objections at 8.)

Petitioner attempts to clarify that Exhibit 2, introduced at the evidentiary hearing, is the picture of a "the guy with backpack," despite the Supplemental Report's failure to find this fact.  (*Id.* at 12.)  He then attempts to show that Miller did indeed have this picture in his possession on the date of Germaine's photo identification, therefore Miller must have shown it to him.

Petitioner next objects to the Magistrate Judge's crediting the testimony of Miller and the hearsay of ASA Gahm over the deposition testimony of Germaine.  (*Id.* at 12-14.)

As to the Supplemental Report's conclusions, Petitioner objects to the findings that the photo array was not unduly suggestive, Germaine's identification was reliable, Germaine's pre-identification descriptions were not material and the time between the robbery and identification was short, among others.  (*See generally*,  *id.* at 15-28.)

Finally, Petitioner repeats his argument that, based on the record as developed at the evidentiary hearing, trial counsel's failures to move to suppress the out-of-court identification and cross-examine Germaine at trial about the identification were unreasonable and prejudicial, as the motion to suppress would have been granted if filed and the outcome of the trial drastically different.  (*See id.* at 28-38.)

22

He requests that this Court overrule the Supplemental Report and grant his Petition as to claim three.  (*Id*. at 38.)  In the alternative, he asks that this Court take further testimony from Miller to adequately assess his credibility.  (*Id*. at 14.)

## II.    Legal Standard

### A.    Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim in a habeas petition, the petitioner must make a particularized showing of an identifiable lapse in trial counsel's performance which falls below constitutional standards, and that this error was prejudicial – *i.e*., but for counsel's error, there is a reasonable probability that the ultimate result would have been different..  *Strickland*, 466 U.S. at 696.  Failure to make a showing of either prong defeats the ineffectiveness claim.  *Id.*  A court does not need to address both *Strickland* prongs if the petitioner fails to make a sufficient showing on one. *Id.* at 697.

To show that counsel's performance was unreasonable, a petitioner must establish that no competent counsel would have taken (or omitted) the action that his counsel did take.  *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001).  Counsel is entitled to the strong presumption that their conduct falls into the wide range of reasonable professional conduct.  *Strickland*, 466 U.S. at 689-90.  The court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quotation omitted).

23

In order to establish prejudice, the petitioner must show that, but for counsel's unprofessional conduct, there is a reasonable probability that the result of the proceeding would have been different.  *See Knowles*, 556 U.S. at _____.  In other words, the petitioner must show a probability sufficient to undermine confidence in the outcome.  *Id.*   No duty exists requiring counsel to raise issues or objections which have little or no chance of success, however.  *See Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).

**B.     Pretrial Identification**

Courts use a two-part test to determine whether a photographic identification procedure is so impermissibly suggestive that it creates a substantial likelihood of irreparable misidentification.  *Simmons v. United States*, 390 U.S. 377 (1968).  The first inquiry is whether the procedure itself was unduly suggestive: whether the line-up suggests which individual the witness should identify.  *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  The court then looks at the totality of the circumstances to determine whether the identification was still reliable.  *Id.* at 199; *Blanco v. Singletary*, 943 F.2d 1477, 1508 (11th Cir. 1991).  Five factors that weigh in the reliability calculation are: (1) opportunity of the witness to view the suspect at the time of the crime, (2) the witness' degree of attention, (3) accuracy of the witness' prior description of the suspect, (4) level of certainty demonstrated by the witness at confrontation, and (5) length of time between crime and confrontation.  *Neil*, 388 U.S. at 199-200; *see also O'Brien v. Wainright*, 738 F.2d 1139, 1141 (11th Cir. 1988).

### III.     Discussion

#### A.     Claim Three

Taken alone, Germaine's deposition testimony gives rise to the possibility that he was shown a suggestive photograph prior to the May 11, 2001 photographic identification.  It is for this reason that the Court remanded the matter to the Magistrate Judge: to expand the record as to this claim.  Contrary to Petitioner's strenuous arguments, the only "finding" made in the Court's Order Remanding Petition was "that further development of the record on the issue of the allegedly suggestive photo lineup is necessary to determine whether Petitioner's counsel was ineffective for failing to move to suppress Germaine's identification or cross-examine Germaine regarding the events leading to his identification of Petitioner."  (Order at 6-7.)   The Court now concurs with the Magistrate Judge in concluding that the record, having been supplemented by the evidentiary hearing, indicates that Germaine was not shown a photograph of a man wearing a backpack or a man with backpack prior to his out-of-court identification of Petitioner.

First, the testimony at the evidentiary hearing of Kumjian, Hladky and Miller establishes that Miller did not possess and/or show photographs of Petitioner or any man with a backpack to Germaine prior to his identification of Petitioner on May 11, 2001. Although Petitioner claims their testimony is biased and directly contradicts the deposition testimony of Germaine, the Court defers to the credibility determination of the Magistrate Judge, made after listening to the full testimony and in light of all of the

evidence presented.  *See United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (stating that credibility determinations are within the province of the fact finder and should not be disturbed).  The Court is also persuaded by Kamensky's testimony that, during his representation, Petitioner never told him he had been photographed with a backpack; had he done so, Kamensky would have pursued the issue.  (Supp. Report at 27.)

Second, the time-line of events, as established through the testimony, reveals that following the night of the robbery, April 26, 2001, Germaine next met with the police on the morning of May 11, 2011, at which time he identified Petitioner in the photo array.

(Hearing Tr. 119:2-10; Germaine Depo. 29:20-24.)  Neither Germaine's deposition testimony (at pages 10, 29-30) nor the testimony at the evidentiary hearing definitively establishes that he saw any photographs *before* his identification.

Petitioner attempts to discount the Supplemental Report's reliance on ASA Gahm's statement at sidebar as hearsay.  (Objections at 14 (Gahm stated to the trial court that Germaine told him he was not shown a photograph before the photo array).)  Putting aside the hearsay issue, the Court nevertheless finds value in this statement as evidence of Gahm's state of mind regarding the allegedly suggestive photo array – Gahm did not believe it actually happened.  (*See* Trial Tr. at 17.)

Petitioner also contends that the trial court found that "[Germaine] said in the deposition the photo of the backpack was shown to him before."  (Objections at 7-9 (citing Trial Tr. at 17).)  This finding of historical fact is therefore entitled a presumption

of correctness under 28 U.S.C. 2254(e)(1) and this Court should be bound by it.  (*See id.*

(*citing Burden v. Zant*, 498 U.S. 433, 436 (1991).)

Findings of fact made by trial courts are entitled to the presumption of correctness.

*Burden*, 498 U.S. at 436 (stating this rule and exceptions under AEDPA predecessor

statute, § 2254(d)).  However, the trial court's statement does not fall under the

presumption of correctness for two simple reasons: (1) the trial court's statement was not

a finding of fact, but a statement made during an objection over opening statements and

(2) it was made at a sidebar and not following an evidentiary presentation, argument on

the merits or in a written opinion.  *Cf. Soffar v. Johnson*, 237 F.3d 411, 467 (5th Cir.

2000) (presumption of correctness given to state habeas court finding of fact made in a

184-page opinion following a thirteen-day evidentiary hearing).  For this reason, the

Court declines to award the same level of deference to a seeming inquisition made by the

trial court during counsel's sidebar discussing an objection to the opening statement.

Having found that Petitioner failed to show that Germaine viewed a photograph or

a person wearing a backpack or a man with backpack prior to the identification

procedure, the Court holds that trial counsel's performance did not fall below

constitutional standards when he failed to file a motion to suppress or cross-examine

Germaine on this issue.  *See Strickland*, 466 U.S. at 696; *Grayson*, 257 F.3d at 1216.

Petitioner's extension of his claim to include Kamensky's failure to inquire further

into Germaine's statement at or after deposition similarly fails.  The imprecision of

Germaine's deposition testimony and Kamensky's admitted difficulty understanding

27

Germaine due to a language problem create an air of uncertainty as to whether additional questioning would have clarified Germaine's statements or elicited information favorable to Petitioner.  As a result, any claimed benefits by Petitioner are merely speculative.

The Court further finds the Supplemental Report's findings that the photo array was not suggestive, the procedures leading up to it did create a substantial likelihood of misidentification and Germaine's identification was reliable under the totality of the circumstances to be supported by the record and the law.  The photographic array shown to Germaine was not unduly suggestive.  *See O'Brien*, 738 F.2d at 1141.  Nor were the circumstances leading up to or surrounding Germaine's identification tainted such that they would create a substantial likelihood of misidentification.  *See Neil*, 409 U.S. at 198.

Germaine's out-of-court identification is also reliable under the totality of the circumstances.  *See United States v. Meyer*, 359 F.3d 820, 825-26 (6th Cir. 2004.)  He was able to see the robber's face three times. (Trial Tr. At 34:5; 41:7.)  He estimated that he had a clear, unobstructed view of the robber's face for ten to twenty seconds at a distance of twenty to twenty five feet under ample lighting.  (*Id*. at 42-43; 46-47.)  Germaine's heightened degree of attention to the robber resulted in him remembering details such as the color of the shotgun and words uttered by the robber.  (*Id*. at 35; 55.)  Although not totally consistent, Germaine's descriptions closely resemble Petitioner's appearance.  Finally, his out-of-court identification of Petitioner was immediate and unequivocal, and he testified to that effect at trial. (*Id*. At 39-40; 136-39.)  The Court concurs with the Magistrate Judge that Germaine's identification of Petitioner was made

within two weeks, a relatively short period of time after the robbery, and therefore was inherently more reliable than an in-court identification. *State v. Freber*, 366 So.2d 426, 428 (Fla. 1978). Accordingly, Kamensky's decision not to file a motion to suppress out-of-court identification can be considered an informed and reasonable strategic decision.

Assuming Kamensky's acts and omissions fell below the threshold of constitutional representation, Petitioner nevertheless cannot show he was prejudiced. *See Strickland*, 466 U.S. at 696. As set forth in the Supplemental Report, any motion to suppress would have been denied (based on the reasons set forth *supra*), and Petitioner has not shown that a different cross-examination of Germaine at trial would have altered its result. *See id.*; *see also, Julien*, 2005 WL 2290287, at ** 15-16.

Petitioner's remaining Objections do not persuade and the Court concludes that his third claim for relief must be denied.

### B.    All Other Claims For Relief

Implicit in the Court's September 11, 2009 Order Remanding Petition was the finding that only claim three presented a potential error on which relief could be granted. As to claims one, two and four through thirteen, the Court, upon review of the Report and Objections, adopts the thorough and well-supported findings and recommendations of the Magistrate Judge's January 3, 2008 Report. Accordingly, Petitioner's remaining claims for relief are denied.

## IV.    Conclusion

Consistent with the foregoing, it is **ORDERED AND ADJUDGED** that:

1.      The Report and Recommendations (D.E. 23) of Magistrate Judge Patrick A. White, issued on January 3, 2008, is **ADOPTED**, except as to claim three.

2.      The Supplemental Report (D.E. 93) of Magistrate Judge Patrick A. White, issued on May 26, 2010, is **ADOPTED**.

3.      Petitioner Eugene Hunter's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2254, filed on May 27, 2007, is **DENIED**.

4.      This Case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 29th day of September, 2011.


**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**